2003 ND 27

**Tyronne PELTIER, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee.**

Nos. 20020232–20020235.

Supreme Court of North Dakota.

March 5, 2003.

Scott R. Thompson, Thompson & Thompson, Devils Lake, N.D., for petitioner and appellant.

Lonnie Olson, State's Attorney, Devils Lake, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1]  Tyrone Peltier appealed from an order denying his motion for post-conviction relief.  We conclude Peltier did not receive an illegal sentence when the trial court imposed consecutive sentences upon revocation of probation after Peltier had originally pled guilty under a plea agreement calling for concurrent sentences.  We affirm.

I

[¶ 2]  On February 19, 1997, Peltier pled guilty to four class C felony charges arising in Ramsey County.  The plea was the result of an oral plea agreement between Peltier and the State, which was disclosed in open court.  After advising Peltier of the information required under N.D.R.Crim.P. 11, finding a factual basis for the plea, and determining the plea was voluntarily made, the trial court accepted the plea agreement and sentenced Peltier according to its terms.  On a first charge of terrorizing, the trial court sentenced Peltier to serve four years in prison with one year suspended, followed by five years of supervised probation upon his release.  On a charge of reckless endangerment, the trial court sentenced Peltier to serve five years in prison with three years suspended, followed by five years of supervised probation upon his release.  On a second charge of terrorizing, the trial court sentenced Peltier to serve five years in prison with three years suspended, followed by five years of supervised probation upon his release.  On a charge of felon in possession of a firearm, the trial court sentenced Peltier to serve five years in prison with three years suspended, followed by five years of supervised probation upon his release.  Adhering to the terms of the plea agreement, the trial court further ordered the sentences on the reckless endangerment, felon in possession of a firearm, and

second terrorizing charges to run concurrently with the sentence on the first terrorizing charge.

[¶ 3] After serving four years in prison, Peltier was placed on supervised probation to complete his sentence. On September 11, 2001, Peltier's probation officer filed a petition to revoke his probation. At a hearing on November 29, 2001, Peltier admitted that he violated the terms of his probation, and the trial court revoked it. The trial court sentenced Peltier to serve the remaining three years in prison on the second terrorizing charge and to serve the remaining three years in prison on the reckless endangerment charge, the sentences to be served consecutively. The trial court sentenced Peltier to serve the remaining one year in prison on the first terrorizing charge and to serve the remaining three years in prison on the charge of felon in possession of a firearm, both sentences to be served concurrently with the sentence on the second terrorizing charge. Peltier was therefore sentenced to serve six years in prison.

[¶ 4] On February 21, 2002, Peltier filed an application for post-conviction relief, alleging the trial court violated state law when it imposed consecutive sentences upon revocation of his probation, because the original plea agreement required concurrent sentences. Peltier also claimed the trial judge was improperly biased against him at the probation revocation hearing. Following an evidentiary hearing, the trial court denied Peltier's application for post-conviction relief. The court ruled, "[t]he record of sentencing reflects no restriction on the Court in giving consecutive sentences to the defendant."

[¶ 5] The trial court had jurisdiction under N.D.C.C. §§ 27–05–06 and 29–32.1–03. Peltier's appeal is timely under N.D.C.C. § 29–32.1–14 and N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 29–28–06 and 29–32.1–14.

II

[¶ 6] A trial court's findings of fact in post-conviction relief proceedings will not be disturbed unless they are clearly erroneous. *Hill v. State*, 2000 ND 143, ¶ 17, 615 N.W.2d 135. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has been made. *DeCoteau v. State*, 2000 ND 44, ¶ 10, 608 N.W.2d 240. Questions of law are fully reviewable on appeal of a post-conviction proceeding. *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719.

A

[¶ 7] Peltier argues the trial court violated state law when it imposed consecutive sentences upon revocation of his probation, because the original plea agreement with the State called for concurrent sentences. A sentence that does not comply with a promise of a plea agreement is illegal, entitling a defendant to post-conviction relief. *DeCoteau v. State*, 504 N.W.2d 552, 556 (N.D.1993).

[¶ 8] Peltier relies on N.D.C.C. § 12.1–32–07(6), which provides in part:

If the defendant violates a condition of probation at any time before the expiration or termination of the period, the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may *revoke the probation and impose any other sentence that was available under section 12.1–32–02 [relating to sentencing alternatives] or 12.1–32–09 [relating to dangerous special offenders] at the time of initial sentencing or deferment.*

(Emphasis added). Peltier argues the trial court was bound by the parties' plea agreement, which required that the sentences run concurrently, and the court could not impose consecutive sentences on revocation of probation because consecutive sentences were not an available alternative under the plea agreement at the time of the initial sentencing.

[¶ 9] Peltier's argument rests upon the assumption that he entered into a binding plea agreement with the State. The State argues the agreement was for a nonbinding recommendation of sentence. A variety of binding and nonbinding plea agreements can result from plea negotiations. *See State v. Farrell*, 2000 ND 26, ¶ 16, 606 N.W.2d 524. In *State v. Klein*, 1997 ND 25, ¶ 17, 560 N.W.2d 198, *overruled on other grounds, Froistad v. State*, 2002 ND 52, ¶ 6, 641 N.W.2d 86, this Court explained:

> N.D.R.Crim.P. 11(d) governs plea agreements. We have recognized N.D.R.Crim.P. 11(d)(1) is like F.R.Crim.P. 11(e)(1). *DeCoteau v. State*, 504 N.W.2d 552, 558 n. 2 (N.D. 1993). Under F.R.Crim.P. 11(e)(1), there are three kinds of plea agreements. "[U]pon the entering of a plea of guilty . . . the attorney for the government will do any of the following: (A) move for dismissal of other charges; or (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or (C) agree that a specific sentence is the appropriate disposition of the case." F.R.Crim.P. 11(e)(1); *DeCoteau.*

■ [¶ 10] A nonbinding recommendation of sentence and a binding plea agreement under N.D.R.Crim.P. 11(d) are significantly different. *See State v. Thompson*, 504 N.W.2d 315, 319 (N.D.1993). If the parties agree to a nonbinding recommendation of sentence, the State fulfills its obligation when it makes the specified nonbinding recommendation, and the trial court may impose a harsher sentence than the one recommended without allowing the defendant to withdraw the guilty plea. *Id.* When presented with a binding plea agreement, the court is limited to three options: the court may accept the agreement, reject the agreement, or defer its decision until receipt of a presentence report. *See Klein*, 1997 ND 25, ¶ 18, 560 N.W.2d 198; N.D.R.Crim.P. 11(d)(2). If the court accepts a binding plea agreement, the court may not impose a sentence less favorable than the sentence provided for in the plea agreement. *See* N.D.R.Crim.P. 11(d)(3). If the court rejects a binding plea agreement, the court must inform the defendant it is not bound by the agreement, must allow the defendant to withdraw the plea, and must inform the defendant that if the defendant persists in pleading guilty, the court may impose a sentence less favorable than the one provided for in the plea agreement. *See* N.D.R.Crim.P. 11(d)(4).

[¶ 11] At the initial sentencing hearing, the trial court advised Peltier of the maximum sentences on each charge before it was informed of the plea agreement. Peltier's trial attorney disclosed the terms of the agreement to the trial court. On the first charge of terrorizing, Peltier's attorney described the agreement as "[f]or the plea of guilty, then the State would recommend a five-year jail sentence to serve four years." On the other three charges, Peltier's attorney said Peltier "would receive" the various sentences in exchange for the pleas. The trial court asked Peltier to plead to the charges and whether the pleas had been entered "pursuant to the plea agreement." The trial court was informed that the State had agreed to send

a letter to the United States Attorney recommending that federal charges not be brought against Peltier, and the court ordered that a copy of the letter be filed with the clerk of court. The trial court said it would "adhere to the plea agreement as it has been outlined," and sentenced Peltier according to the terms disclosed in open court.

[¶ 12] Although the precise nature of the agreement is unclear from the record, the part of the agreement providing that the State would "recommend" five years with one year suspended strongly suggests that this was not a binding plea agreement, but was a nonbinding recommendation of sentence. *See State v. Sisson*, 1997 ND 158, ¶ 3 n. 1, 567 N.W.2d 839. Nevertheless, for purposes of this appeal we will treat the parties' agreement as a binding plea agreement that the trial court accepted.[1]

[¶ 13] This Court has long held that the current provisions of N.D.C.C. § 12.1-32-07(6) allow a trial court to impose a harsher sentence upon revocation of probation. *See, e.g., State v. Vavrosky*, 442 N.W.2d 433, 437 (N.D.1989); *State v. Miller*, 418 N.W.2d 614, 616 (N.D.1988). This Court has also consistently held that resentencing a defendant after revocation of probation to a sentence greater than that originally imposed does not violate the double jeopardy or due process clauses. *See Davis v. State*, 2001 ND 85, ¶ 11, 625 N.W.2d 855; *State v. Jones*, 418 N.W.2d 782, 786 (N.D.1988). We have reasoned that N.D.C.C. § 12.1-32-07(6) gives a defendant notice that violation of the conditions of probation could result in imposition of a harsher sentence and therefore a

defendant has no legitimate expectation in the finality of the originally imposed sentence. *See State v. Lindgren*, 483 N.W.2d 777, 779 (N.D.1992); *State v. Gefroh*, 458 N.W.2d 479, 483 (N.D.1990). We have not previously been confronted with an argument that a binding plea agreement continues to control resentencing upon revocation of probation.

[¶ 14] Peltier relies on a Pennsylvania Superior Court decision, *Commonwealth v. Anderson*, 434 Pa.Super. 309, 643 A.2d 109 (1994), to support his argument that the trial court was limited to imposing concurrent sentences upon revocation of his probation. In *Anderson*, the defendant pled guilty to two counts of burglary and was sentenced to a period of incarceration followed by five years of probation. Two months later, the defendant entered into a negotiated binding plea agreement and pled guilty to one count of theft and one count of receiving stolen property. The trial court accepted the guilty plea and the agreement and sentenced the defendant to five years of probation, which under the terms of the plea agreement would run concurrently with the defendant's sentence for the burglary convictions. The defendant subsequently violated the terms of her probation. The trial court revoked her probation and imposed a sentence of two to five years incarceration on the burglary convictions and two to four years incarceration on the theft convictions. The trial court ordered the sentences to be served consecutively, which substantially increased the defendant's term of imprisonment.

[¶ 15] The *Anderson* court concluded the trial court had imposed an invalid sen-

---

1. In cases where the nature of a plea agreement is ambiguous, a trial court should clarify the matter on the record. *See generally Davis v. State*, 2001 ND 85, ¶ 13 n. 2, 625 N.W.2d 855 (encouraging trial courts to provide an appropriate warning in any suspended sentence that, upon violating probation, a defendant can receive any sentence that was initially available).

tence upon revocation of the defendant's probation, because by sentencing the defendant to serve her sentences consecutively, the court abrogated the binding plea agreement. Although Pennsylvania has a statute similar to N.D.C.C. § 12.1–32–07(6), stating upon revocation of probation the trial court possesses the same sentencing alternatives that were available at the time of the initial sentencing, *see* 42 Pa. Cons.Stat. § 9771(b), the court reasoned "the trial court's sentencing alternatives at the time of initial sentencing were circumscribed by the plea agreement," and the "imposition of consecutive sentences upon probation revocation was in direct abrogation of the plea agreement and enlarged the sentencing options that had been available to the court at the time of the original sentencing." *Anderson,* 643 A.2d at 114 (footnote omitted).

[¶ 16] We disagree with the *Anderson* court's analysis and conclusion. The policy in North Dakota is that a sentence which includes probation is not final, but is designed to provide a flexible alternative that allows the trial court to monitor the defendant's conduct while on probation and to alter the defendant's sentence if the initial sentence of probation is not effective. *See Davis,* 2001 ND 85, ¶ 11, 625 N.W.2d 855; *Jones,* 418 N.W.2d at 784. We are not persuaded to change our view about the lack of finality in a sentence including probation merely because the sentence is the result of a binding plea agreement.

[¶ 17] Moreover, we are unpersuaded by the *Anderson* court's unwarranted extension of a defendant's benefits arising from a binding plea agreement. We agree with the analysis of the court in *United States v. Chen,* 837 F.Supp. 1225, 1226 (S.D.Fla.1993), *aff'd,* 25 F.3d 1061 (11th Cir.1994). In *Chen,* paragraph three of the parties' binding plea agreement pro-

vided that the court could impose a maximum sentence of five years probation on one of the counts, and the court accepted the agreement and imposed a sentence of five years probation. Upon revocation of the defendant's probation, the court sentenced the defendant to ten years in prison. The defendant argued the court was empowered to sentence him only under the terms of the original binding plea agreement. The court concluded, however, that the government and the defendant fully performed and concluded their agreement at the original sentencing proceeding:

> In this case, there is no evidence to suggest that, at the time of the bargain, either of the parties reasonably contemplated, or expected, that paragraph three of the agreement would forever limit a sentencing Court regardless of the Defendant's conduct while on probation. "Probation would be a useless implement in the criminal justice process if it could not be revoked," and it would be an inconsistent, and counter-intuitive interpretation of the plea agreement to rule that the prosecution had agreed to a bargain that defeats the very purpose of the sentence that they sought to obtain. *United States v. Gerace,* 997 F.2d 1293, 1295 (9th Cir.1993).

> On the contrary, a fair reading of the agreement, viewed "against the background of negotiations," insists that the plea agreement expired once the conditions of the agreement were fulfilled at the original sentencing. Consequently, this Court finds that paragraph three of the agreement is not binding upon this Court at these proceedings, and the Defendant, having enjoyed the benefits of his original plea agreement, cannot now ask to revive parts of that old agreement, or attempt to change his plea at this late date.

*Chen,* 837 F.Supp. at 1227. *See also Short v. State,* 135 Idaho 40, 13 P.3d 1253, 1255 (App.2000) (the defendant received benefit of his plea bargain by being given the opportunity to avoid incarceration if he could successfully complete probation, and once he violated probation, court was not bound by agreement but could sentence defendant to incarceration within statutory maximum); *People v. Bray,* 186 Ill.App.3d 394, 134 Ill.Dec. 333, 542 N.E.2d 512, 514–15 (1989) (rejecting the argument that three-year maximum sentence in plea agreement was still binding on the court for any further sentence imposed for revocation of probation).

[¶ 18] We conclude Peltier and the State satisfied the conditions of their binding plea agreement at the original sentencing hearing when the trial court sentenced Peltier according to the terms of the agreement. Consequently, the trial court was no longer bound by the terms of the plea agreement, and was free to impose consecutive sentences resulting in a harsher sentence. *See State v. Ulmer,* 1999 ND 245, ¶ 4, 603 N.W.2d 865 (it is within the trial court's sound discretion whether a sentence should run concurrently with or consecutively to another sentence, unless there is a statute to the contrary).

[¶ 19] Peltier argues the trial court was required to inform him that the plea agreement would not govern if he violated probation. Peltier testified at the post-conviction hearing that he believed he could be given consecutive sentences only if he violated probation by committing a felony. He later testified this understanding did not arise from anything said at the initial sentencing hearing, but from information he received from "somebody" after he had been initially sentenced. A defendant's subjective beliefs and expectations about the effect of a plea agreement, when unsupported by any promises from the State or any indications from the court, are insufficient to invalidate the agreement. *See State v. Hamann,* 262 N.W.2d 495, 500 (N.D.1978). In any event, N.D.C.C. § 12.1–32–07(6) gave Peltier "actual notice" that a violation of probation could result in the imposition of a sentence more severe than his originally imposed sentence. *Davis,* 2001 ND 85, ¶ 13, 625 N.W.2d 855; *see also Lindgren,* 483 N.W.2d at 779; *Jones,* 418 N.W.2d at 784.

[¶ 20] We conclude the trial court was not bound by the terms of the plea agreement when it sentenced Peltier upon the revocation of his probation. The consecutive sentences imposed on Peltier are within the parameters of the sentences that were available at the time of the initial sentencing under N.D.C.C. § 12.1–32–07(6). Consequently, we conclude Peltier's sentence is not illegal.

B

[¶ 21] Peltier argues the trial court was biased and prejudiced against him. However, the trial court's comments in this case "were but a lecture, not uncommon or inappropriate at a sentencing or probation hearing, and did not indicate prejudice or bias" against Peltier. *State v. Saavedra,* 406 N.W.2d 667, 673 (N.D.1987).

III

[¶ 22] The order is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 24] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of MARING, J., disqualified.