# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 135

Jessy Duane Olson,                                            Petitioner and Appellant

v.

State of North Dakota,                                       Respondent and Appellee

No. 20180268

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Thomas R. Olson, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Garrett D. Ludwig, Mandan, ND, for petitioner and appellant.

Reid A. Brady (argued), Assistant State's Attorney, and Nicholas Samuelson (appeared), under the Rule on Limited Practice of Law by Law Students, Fargo, ND, for respondent and appellee.

**McEvers, Justice.**

[¶1]   Jessy Olson appeals a district court order denying his application for post-conviction relief.  Olson argues accomplice to murder is not a cognizable offense, and he received ineffective assistance of counsel and his guilty pleas to the charges of accomplice to murder and conspiracy to commit aggravated assault were not voluntary.  We affirm.

I

[¶2]   In May 2015, Olson and others were involved in a fight outside a bar in Fargo.  Three individuals sustained serious injuries, including Joey Gaarsland, who later died from his injuries.  Olson was arrested and charged with murder and three counts of conspiracy to commit aggravated assault.  The district court appointed an attorney to represent Olson throughout the proceeding.

[¶3]   In March 2016, the State amended the criminal charges against Olson.  The State amended the murder charge to accomplice to murder and dismissed one of the counts of conspiracy to commit aggravated assault.  The State alleged Olson acted as an accomplice to Gaarsland's murder by aiding another in committing the offense that resulted in Gaarsland's death.

[¶4]   Olson and the State entered into a written "Proffer Agreement" relating to a resolution of the case.  Olson agreed to cooperate with the State in the prosecution of the other defendants.  The agreement provided Olson would plead guilty and the State would recommend no more than twenty years in prison and Olson would be free to argue for a lesser sentence.  After signing the agreement, Olson entered *Alford* pleas to accomplice to commit murder and two counts of conspiracy to commit aggravated assault.  In October 2016, Olson was sentenced to twenty years in prison.

[¶5]    Olson applied for post-conviction relief, arguing his guilty pleas were not knowing and voluntary, accomplice to murder is not a cognizable offense, and he received ineffective representation from his attorney. Olson requested the district court grant him post-conviction relief so he could withdraw his guilty pleas.

[¶6]    At an evidentiary hearing on Olson's application, he testified that on the basis of his attorney's advice, he was rushed in to pleading guilty and believed he would be sentenced to five years in prison instead of twenty years. The district court denied Olson's application, concluding his attorney provided effective representation and his guilty pleas were knowing and voluntary.

II

[¶7]    We employ the following standard of review in post-conviction relief proceedings:

> A trial court's findings of fact in post-conviction relief proceedings will not be disturbed unless they are clearly erroneous. *Hill v. State*, 2000 ND 143, ¶ 17, 615 N.W.2d 135. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has been made. *DeCoteau v. State*, 2000 ND 44, ¶ 10, 608 N.W.2d 240. Questions of law are fully reviewable on appeal of a post-conviction proceeding. *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719.

*Peltier v. State*, 2003 ND 27, ¶ 6, 657 N.W.2d 238.

A

[¶8]    Olson argues the charge of accomplice to commit murder is not a cognizable criminal offense in North Dakota.

[¶9]    Under N.D.C.C. § 12.1-16-01(1)(b), a person is guilty of murder, a class AA felony, if the person "[c]auses the death of another human being under circumstances manifesting extreme indifference to the value of human life[.]" Extreme indifference murder is a general intent crime. *State v. Borner*, 2013 ND 141, ¶ 18, 836 N.W.2d

383. "Under N.D.C.C. § 12.1-16-01(1)(b), a person does not intend to cause the death of another human-being, but rather death is a consequence of the defendant's willful conduct." *Borner*, at ¶ 18. "In other words, extreme indifference murder results in an unintentional death from behavior manifesting an extreme indifference to the value of human life." *Id.*

[¶10] The amended information charged Olson with accomplice to commit murder under N.D.C.C. §§ 12.1-03-01(1)(b) and 12.1-16-01(1)(b), claiming Olson "acted as an accomplice to the murder of Joey Gaarsland by intending that an offense be committed and aiding another in committing the offense that resulted in the death of Joey Gaarsland." Under N.D.C.C. § 12.1-03-01(1)(b), "[a] person may be convicted of an offense based upon the conduct of another person when: [w]ith intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so."

[¶11] Olson's primary argument is that because conspiracy to commit extreme indifference murder is not cognizable, accomplice to extreme indifference murder is also not cognizable. *See Borner*, 2013 ND 141, ¶ 20, 836 N.W.2d 383 (holding "conspiracy to commit extreme indifference murder, under N.D.C.C. §§ 12.1-06-04 and 12.1-16-01(1)(b), is not a cognizable offense"). Olson has not cited any authority holding accomplice is synonymous with conspiracy. In *State v. Lind*, 322 N.W.2d 826, 842 (N.D. 1982), this Court addressed a similar argument and held a co-conspirator is not synonymous with accomplice:

> [W]e have no authority cited to us that a co-conspirator is synonymous with an accomplice. The North Dakota Criminal Code is consistent in its separate treatment of co-conspirators and accomplices, as evidenced by Section 12.1-06-04(5): "Accomplice liability for offenses committed in furtherance of the conspiracy is to be determined as provided in Section 12.1-03-01." The definition of "accomplice" in Section 12.1-03-01(1)(a) and (b), specifies acts different from those set forth in the definition of "criminal conspiracy" in Section 12.1-06-04(1).

3

[¶12]   Other states with similar accomplice statutes have held accomplice to extreme indifference murder or reckless manslaughter is a recognized offense.  In *Riley v. State*, 60 P.3d 204, 215-17 (Alaska Ct. App. 2002), the court discussed cases from other states imposing accomplice liability for crimes involving unintended injury or death.  *See Ex parte Simmons*, 649 So.2d 1282 (Ala. 1994); *Mendez v. State*, 575 S.W.2d 36 (Tex. Crim. App. 1979); *People v. Novy*, 597 N.E.2d 273 (Ill. App. Ct. 1992); *People v. Cole*, 625 N.E.2d 816 (Ill. App. Ct. 1993); *Hooks v. State*, 416 A.2d 189 (Del. 1980); *People v. Wheeler*, 772 P.2d 101 (Colo. 1989); *State v. Goodall*, 407 A.2d 268 (Me. 1979); *Commonwealth v. Bridges*, 381 A.2d 125 (Pa. 1977).

[¶13]   In summarizing these courts' decisions, the *Riley* court, 60 P.3d at 215, 221, explained:

> [W]ith respect to offenses that involve a resulting injury or death, these courts hold that accomplice liability requires proof (1) that the accomplice intended to promote or facilitate another's unlawful or dangerous *conduct*, and (2) that the accomplice acted with the culpable mental state specified in the underlying statute with respect to the resulting injury or death.  Thus, these courts uphold accomplices' convictions for unintended criminal homicides—e.g., "extreme indifference" murder or reckless manslaughter—based on proof that the accomplice, acting with the culpable mental state required for the underlying crime, purposely encouraged or aided another person to engage in conduct that posed a substantial and unjustifiable danger to human life.
>
> . . . .
>
> In conclusion: The Model Penal Code was written to impose accomplice liability for crimes involving unintended injury or death if the accomplice intentionally promotes or facilitates the *conduct* that produces the injury or death, even though the accomplice did not intend this result.  Among the states that have complicity statutes based on the Model Penal Code, most courts have interpreted their statutes this way.

[¶14]   The authorities cited have accomplice statutes based in part on Model Penal Code § 2.06(3) (1962), relating to liability for conduct of another:

> (3)     A person is an accomplice of another person in the commission of an offense if:
>> (a)     with the purpose of promoting or facilitating the commission of the offense, he

4

(i)      solicits such other person to commit it, or

(ii)      aids or agrees or attempts to aid such other person in planning or committing it, or

(iii)      having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or

(b)      his conduct is expressly declared by law to establish his complicity.

[¶15] Our accomplice statute, N.D.C.C. § 12.1-03-01, is derived from § 401 of the proposed Federal Criminal Code. *See Lind*, 322 N.W.2d at 841 ("Section 401(1) of the proposed Federal Criminal Code is virtually identical in all material respects to Section 12.1-03-01(1), N.D.C.C."); *Final Report of the Nat'l Comm'n on Reform of Federal Criminal Laws* § 401, at 33 (1970). The proposed Federal Criminal Code Working Papers state "The language proposed in the draft [of § 401] is substantially that used in most of the recent State revisions and the Model Penal Code." I *Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws* 154-55 (1970) (citing Model Penal Code § 2.06).

[¶16] Olson asserts accomplice to murder requires aid with intent that murder be committed. He claims that because Gaarsland's death was unintentional, he cannot be charged with accomplice to extreme indifference murder. We disagree.

[¶17] Olson was charged with accomplice under N.D.C.C. § 12.1-03-01(1)(b), whereby one may be convicted of an offense based upon the conduct of another when, with intent that an offense be committed, he or she aids the other to commit it. That language is similar to the Model Penal Code § 2.06(3) language cited above. With respect to extreme indifference murder, the language of N.D.C.C. § 12.1-03-01(1)(b) does not require an accomplice intend that murder be committed, only the intent that an offense be committed.

[¶18] Extreme indifference murder under N.D.C.C. § 12.1-16-01(1)(b) is a general intent crime and death is a consequence of a defendant's willful conduct. *Borner*, 2013 ND 141, ¶ 18, 836 N.W.2d 383. "A person engages in conduct: 'Willfully' if he engages in the conduct intentionally, knowingly, or recklessly." N.D.C.C. § 12.1-02-02(1)(e). Olson also plead guilty to conspiracy to commit aggravated assault,

5

agreeing to engage in willful conduct causing serious bodily injury to another human being. *See* N.D.C.C. §§ 12.1-06-04 and 12.1-17-02(1). Under this factual situation, Olson could be charged with accomplice to extreme indifference murder by agreeing to willfully aid in the aggravated assault upon Gaarsland under circumstances manifesting extreme indifference to the value of human life that ultimately led to Gaarsland's death. We agree with the reasoning of the authorities discussed above and conclude accomplice to extreme indifference murder is a cognizable offense under North Dakota law.

B

[¶19] Olson argues the district court erred in denying his application for post-conviction relief because he received ineffective assistance of counsel in the underlying criminal proceeding.

> The Sixth Amendment of the United States Constitution, applied through the Fourteenth Amendment to the States, and Article I, Section 12, of the North Dakota Constitution guarantee criminal defendants effective assistance of counsel. *State v. Garge*, 2012 ND 138, ¶ 10, 818 N.W.2d 718. An ineffective assistance of counsel claim involves a mixed question of law and fact, fully reviewable by this Court. *Flanagan* [*v. State*], 2006 ND 76, ¶ 9, 712 N.W.2d 602. In order to prevail on a post-conviction claim for ineffective assistance of counsel, an applicant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-96, 694 (1984). An applicant raising a post-conviction claim for ineffective assistance of counsel has the "heavy burden" of establishing the requirements of the two-prong *Strickland* test. *Flanagan*, at ¶ 10.

*Everett v. State*, 2015 ND 149, ¶ 7, 864 N.W.2d 450.

[¶20] Olson argues his trial attorney rushed him into pleading guilty to the amended complaint. Olson claims he was under the belief he would receive a five-year prison sentence and his attorney did not inform him the State would recommend twenty years. Olson argues the district court should have appointed him a new attorney.

6

[¶21]   At the post-conviction hearing, Olson testified he did not learn that the State would recommend twenty years imprisonment until months after the March 2016 change of plea hearing.   Olson testified he called his attorney and requested to withdraw his guilty pleas, and his attorney refused.   Olson testified that after the phone call, his attorney requested to withdraw and Olson wrote a letter to the district court requesting a new attorney.   At a September 2016 hearing on the matter, Olson explained he thought he would be receiving a five-year prison sentence.   After an exchange between Olson, the court, and Olson's attorney, Olson agreed to work it out with his attorney.   The court denied Olson's request for a new attorney.

[¶22]   Olson's attorney testified he discussed the "Proffer Agreement" with Olson before the change of plea hearing.   He testified he advised Olson of his rights and explained to Olson several times the State would ask for twenty years in prison and he would argue for five years.   The "Proffer Agreement," signed by Olson, his attorney, and the State, explicitly states the "State would cap its recommendation at 20 years imprisonment,"  and "Olson will be free to argue for whatever sentence he deems appropriate."

[¶23]   The district court found Olson's trial attorney provided effective assistance of counsel.   The court found Olson's trial attorney's assistance was "well above the necessary standard of care that lawyers have to give to their clients."   The court found the attorney provided Olson with appropriate legal advice, met with Olson on many occasions, and testified credibly at the post-conviction hearing.   The court's findings relating to Olson's trial attorney have support in the record and we are not left with a definite and firm conviction a mistake was made. We conclude the court's findings of fact are not clearly erroneous, and the court did not err in rejecting Olson's ineffective assistance of counsel claim.

C

[¶24]   Olson argues his guilty pleas were not voluntary because the district court failed to comply with N.D.R.Crim.P. 11 at the change of plea hearing.

7

[¶25] When a defendant applies for post-conviction relief seeking to withdraw a guilty plea, we generally treat the application as one made under N.D.R.Crim.P. 11(d). *Everett*, 2015 ND 149, ¶ 14, 864 N.W.2d 450. Under N.D.R.Crim.P. 11(d)(2), a defendant may not withdraw a guilty plea after the district court has imposed sentence unless the defendant shows withdrawal is necessary to correct a manifest injustice. Whether there has been a manifest injustice supporting withdrawal of the plea lies within the court's discretion. *State v. Yost*, 2018 ND 157, ¶ 6, 914 N.W.2d 508. A court abuses its discretion under N.D.R.Crim.P. 11(d) when its legal discretion is not exercised in the interest of justice. *Yost*, at ¶ 18. In determining whether the court abused its discretion, we may be required to review the court's preliminary findings of fact, which will not be disturbed unless they are clearly erroneous. *Greywind v. State*, 2004 ND 213, ¶ 7, 689 N.W.2d 390.

[¶26] Rule 11, N.D.R.Crim.P., governs guilty pleas. Before accepting a guilty plea, the district court must inform the defendant of the following under N.D.R.Crim.P. 11(b)(1):

    (A)    the right to plead not guilty, or having already so pleaded, to persist in that plea;

    (B)    the right to a jury trial;

    (C)    the right to be represented by counsel at trial and at every other stage of the proceeding and, if necessary, the right to have the counsel provided under Rule 44;

    (D)    the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

    (E)    the defendant's waiver of these trial rights if the court accepts a plea of guilty;

    (F)    the nature of each charge to which the defendant is pleading;

    (G)    any maximum possible penalty, including imprisonment, fine, and mandatory fee;

    (H)    any mandatory minimum penalty;

    (I)    the court's authority to order restitution; and

    (J)    that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

8

Rule 11, N.D.R.Crim.P., does not require the court's advice to follow a ritualistic, predetermined formality, but the court must substantially comply with the procedural requirements of the rule to ensure the defendant's guilty plea is voluntary. *Yost*, 2018 ND 157, ¶ 20, 914 N.W.2d 508.

> A trial court is not required to readvise a defendant of each of his rights at a change of plea hearing, provided the court determines that the defendant was properly advised at arraignment, and that the defendant now recalls that advice. It is sufficient to satisfy due process if the defendant's knowledge of his rights is clearly reflected from the whole record.

*Id.* (quoting *State v. Gunwall*, 522 N.W.2d 183, 185 (N.D. 1994)).

[¶27] Olson claims that after the State amended the information, the district court failed under N.D.R.Crim.P. 11(b)(1)(G) to inform him of the maximum possible penalty for accomplice to murder.

[¶28] At his initial appearance, the district court informed Olson that murder was a class AA felony and carried a maximum sentence of life imprisonment without parole. Olson stated he understood the charges against him. At the change of plea hearing, the State informed the court that accomplice to murder carried the same level of offense and the same potential penalties as murder. Olson's attorney did not object to the State's motion to amend. Olson's attorney indicated he reviewed the amended information with Olson and waived a formal reading of the amended information. The court asked Olson about the earlier hearing where he had been read his rights and informed of the charges against him. Olson stated he remembered being read his rights and he understood them. The court asked Olson whether he was pleading guilty or not guilty to the charge of accomplice to murder, a class AA felony, and Olson replied "Guilty." The court asked Olson whether he was pleading guilty voluntarily and Olson responded he was. The court found "there is sufficient factual basis for the pleas which are made pursuant to the *Alford* case, and that the guilty pleas are entered freely and voluntarily."

[¶29] The post-conviction court determined the district court complied with the requirements of N.D.R.Crim.P. 11 and Olson's guilty pleas were knowing and voluntary. From the entire record, we conclude the court in the underlying criminal proceeding substantially complied with Rule 11 before accepting Olson's guilty pleas. Olson failed to establish withdrawal of his guilty pleas was necessary to correct a manifest injustice.

## III

[¶30] Olson's remaining arguments are either unnecessary to our decision or without merit. The order denying Olson's application for post-conviction relief is affirmed.

[¶31] Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Gerald W. VandeWalle, C.J.

10