# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2021 ND 85

Lorenzo Traveras Pemberton,                    Petitioner and Appellant

  v.

State of North Dakota,                    Respondent and Appellee

### Nos. 20200181 & 20200182

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle and Crothers joined. Justice McEvers filed an opinion concurring and dissenting.

Tyler J. Morrow, Grand Forks, N.D., for petitioner and appellant.

James A. Hope, Assistant State's Attorney, Dickinson, N.D., for respondent and appellee.

**Tufte, Justice.**

[¶1] Lorenzo Pemberton appeals from an order denying his application for postconviction relief. Pemberton argues he was convicted of a non-cognizable offense, attempted knowing murder, which does not require the defendant to have an intent to cause the death of another human being. He also argues he received ineffective assistance of counsel. We reverse the district court's order, concluding that attempt to "knowingly" commit a murder is a non-cognizable offense and that the erroneous jury instruction allowing conviction for attempted knowing murder was not harmless beyond a reasonable doubt.

I

[¶2] We described the evidence presented to the jury in *State v. Pemberton*, 2019 ND 157, ¶¶ 2-7, 930 N.W.2d 125, and we will not repeat those facts here except as necessary to assist in resolving the issues raised in this appeal.

[¶3] In 2018, Pemberton was charged with aggravated assault, interference with an emergency call, and felonious restraint. The State later added charges of child neglect and attempted murder in a separate criminal file. The criminal information containing the attempted murder charge alleged Pemberton "intentionally engaged in conduct which, in fact, constituted a step towards the commission of the crime of Murder, when [he] attempted to cause the death of another human being under circumstances manifesting extreme indifference to the value of human life when [he] stabbed the victim with a screw driver multiple times about the head area." The attempted murder charge used language describing attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(b). This Court has held attempted murder under those provisions is not a cognizable offense. *See Dominguez v. State*, 2013 ND 249, ¶ 22, 840 N.W.2d 596.

[¶4] One week before trial, the district court allowed the State to amend the attempted murder charge to allege "the Defendant attempted to intentionally or knowingly cause the death of another human being." The amended

1

information used the language of N.D.C.C. § 12.1-16-01(1)(a) to describe the attempted murder charge. A jury trial was held, and the jury found Pemberton was guilty of all five charges, including attempted murder. Pemberton appealed and the judgment was affirmed. *Pemberton*, 2019 ND 157, ¶ 27.

[¶5]  In March 2020, Pemberton applied for postconviction relief. Pemberton alleged he received ineffective assistance of counsel because his attorney did not preserve vital issues for appeal, his attorney failed to argue at the preliminary hearing that Pemberton had been charged with a non-cognizable offense, and he failed to object to the jury instructions and verdict form. Pemberton also asserted his attempted murder conviction is illegal because a "knowing" murder under N.D.C.C. § 12.1-16-01(1)(a) cannot be the underlying crime for an attempt offense. He requested the district court reverse his attempted murder conviction.

[¶6]  After a hearing, the district court denied Pemberton's application. The court concluded Pemberton failed to establish he received ineffective assistance of counsel. The court also concluded attempted murder under N.D.C.C. § 12.1-16-01(1)(a) was a cognizable offense when Pemberton was charged because this Court had not yet held attempted "knowing" murder to be non-cognizable, prevailing professional norms do not require an attorney to object to a jury instruction based on the current law, Pemberton failed to establish he received ineffective assistance of counsel because his attorney failed to object to the attempted murder jury instruction, and it would not reverse a conviction which was based on the current law.

II

[¶7]  The standard of review in postconviction proceedings is well established:

> A trial court's findings of fact in post-conviction relief proceedings will not be disturbed unless they are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has

2

been made. Questions of law are fully reviewable on appeal of a post-conviction proceeding.

*Olson v. State*, 2019 ND 135, ¶ 7, 927 N.W.2d 444 (citations omitted) (quoting *Peltier v. State*, 2003 ND 27, ¶ 6, 657 N.W.2d 238). The interpretation of a statute is a question of law, which is fully reviewable on appeal. *Dominguez*, 2013 ND 249, ¶ 11.

### III

[¶8]   Pemberton argues the district court erred in denying his application for postconviction relief because his conviction for attempted murder is illegal. He claims he was convicted of attempting to "knowingly" commit murder, which he contends is not a cognizable offense because it permits an individual to be convicted when that individual did not have the purpose to cause the death of another human being and complete the underlying crime.

[¶9]   Pemberton was charged with attempted "intentional or knowing" murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(a). The amended information alleged:

> Pemberton, acting with the kind of culpability otherwise required for commission of a crime, intentionally engaged in conduct, which in fact, constituted a step toward the commission of the crime of Murder, when the Defendant attempted to intentionally or knowingly cause the death of another human being.

[¶10] The relevant part of the criminal attempt statute, N.D.C.C. § 12.1-06-01(1), states:

> A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

A person is guilty of murder under N.D.C.C. § 12.1-16-01(1)(a) if the person "[i]ntentionally or knowingly causes the death of another human being." A

3

person engages in conduct "intentionally" "if, when he engages in the conduct, it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(a). A person engages in conduct "knowingly" "if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(b).

[¶11] In *Dominguez*, 2013 ND 249, ¶ 22, this Court held the offense of attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(b) is not a cognizable offense. We said the plain language of the attempt statute, N.D.C.C. § 12.1-06-01(1), requires that "the accused have an intent to complete the commission of the underlying crime." *Dominguez*, at ¶ 12. The offense of murder requires the defendant to cause the death of another; therefore, in order to intend to complete the commission of the offense for purposes of attempted murder, the defendant must have an intent to cause the death of another. *Id.* at ¶ 13. We held the offense of attempted murder requires the accused to have an intent to kill. *Id.* at ¶ 22. We explained the offense of murder under N.D.C.C. § 12.1-16-01(1)(b) requires a person to cause the death of another human being under circumstances manifesting an extreme indifference to the value of human life, it results in an unintentional death, and it does not require the person to act with specific intent to kill. *Id.* at ¶¶ 13, 22. We held murder under N.D.C.C. § 12.1-16-01(1)(b) cannot be used as the underlying crime for a charge of attempted murder because it does not require proof of an intent to complete the commission of the underlying crime by causing death. *Dominguez,* at ¶ 22.

[¶12] In *State v. Swanson*, 2019 ND 181, ¶ 15, 930 N.W.2d 645, this Court held conspiracy to "knowingly" commit murder is a non-cognizable offense. The Court explained the charge of conspiracy to commit murder requires the State to prove an intent to cause the death of another human being. *Id.* at ¶ 10. This Court further explained:

> Knowingly is statutorily defined as follows: "[A] person engages in conduct . . . [k]nowingly if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, *whether or not it is his purpose to do so.*" N.D.C.C. § 12.1-02-02 (emphasis added).

4

> "Purpose" is defined as "[a]n objective, goal, or end." "Intention" and "purpose" are synonyms. As such, the term knowingly, when used in conjunction with N.D.C.C. § 12.1-16-01(1)(a), permits an individual to be convicted of a murder when they did not have the purpose (synonymous with intent) to cause the death of another human being.

*Swanson,* at ¶ 13 (citations omitted). We held conspiracy to "knowingly" commit a murder is not a cognizable offense "because it allows an individual to be convicted of the offense without an intent to cause the death of another human being." *Id.* at ¶ 15. This Court reversed the defendant's conviction for conspiracy to commit murder because the jury instructions used the term "knowingly," which would allow the jury to convict the defendant without finding he had an intent to cause the death of another human being and allowed the defendant to have potentially been convicted of a non-cognizable offense. *Id.* at ¶ 14.

[¶13] We held "knowingly," as defined in N.D.C.C. § 12.1-02-02, does not require the person to act with purpose, and when used in N.D.C.C. § 12.1-16-01(1)(a), permits a person to be convicted of murder when the person did not intend to cause the death of another human being. *Swanson*, 2019 ND 181, ¶ 13. Because the offense of attempted murder requires the accused to have the intent to complete the commission of the underlying crime by causing the death of another and a "knowing" murder under N.D.C.C. § 12.1-16-01(1)(a) does not require the accused to have the intent to cause the death of another, a "knowing murder" cannot be the basis for an attempted murder conviction. We conclude an attempted "knowing" murder is a non-cognizable offense.

[¶14] In *Dominguez*, 2013 ND 249, ¶ 19, we noted, "When there is evidence of an intent to kill, a person can be convicted of attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(a) for attempting to knowingly or intentionally cause the death of another human being." Although that statement in *Dominguez* may have been overly broad by including the word "knowingly," we were clear that there must be evidence of an intent to kill. "To be guilty of attempted murder, the State must prove the accused had an intent

5

to kill." *Dominguez*, at ¶ 22. We again hold the State must prove the accused had an intent to kill for a defendant to be convicted of attempted murder.

[¶15] Pemberton was charged with attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(a). The jury instructions stated:

> That at said time and place, the Defendant, Lorenzo T. Pemberton, acting with the kind of culpability otherwise required for commission of a crime, intentionally engaged in conduct which, in fact, constituted a substantial step towards the commission of the crime of Murder, when the Defendant attempted to intentionally or knowingly cause the death of another human being when the Defendant stabbed the victim with a screw driver multiple times about the head area.

The jury also received an instruction about the essential elements of the attempted murder offense, stating:

> The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:
>         1) On or about February 23, 2018, in Stark County, North Dakota, the Defendant, Lorenzo Traveras Pemberton;
>         2) Intentionally engaged in conduct which constituted a substantial step towards the commission of the crime of murder; and
>         3) Attempted to intentionally or knowingly cause the death of another human being.

[¶16] The jury was instructed that a person engages in conduct "intentionally" if "when they engage in conduct, it is their purpose to do so," and a person engages in conduct "knowingly" if "when they engage in the conduct, they know or have a firm belief, unaccompanied by substantial doubt, that they are doing so, whether or not it is their purpose to do so."

[¶17] Under these instructions, the jury could have found Pemberton guilty of attempted murder without finding he intended to kill another human being. The verdict form did not require the jury to specify whether it found Pemberton acted intentionally or whether he acted knowingly. The instructions allowed the jury to find Pemberton guilty of a non-cognizable offense.

[¶18] In *Dominguez*, 2013 ND 249, ¶ 26, we acknowledged a conviction does not have to be automatically reversed if the jury was instructed on multiple theories of guilt and one theory was invalid. The error does not require reversal if the State proves the error was harmless beyond a reasonable doubt. *Id.* Harmless error is "any error, defect, irregularity or variance which does not affect substantial rights. Stated simply, harmless error is error that is not prejudicial." *Gonzalez v. State*, 2019 ND 47, ¶ 14, 923 N.W.2d 143 (quoting *Hamilton v. State,* 2017 ND 54, ¶ 8, 890 N.W.2d 810). If the error "is one of constitutional magnitude, we must determine whether the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence." *State v. Pickens*, 2018 ND 198, ¶ 23, 916 N.W.2d 612 (quoting *State v. Smuda*, 419 N.W.2d 166, 168 (N.D. 1988)). "A federal constitutional error is harmless if we are convinced the error did not contribute to the verdict." *State v. Sevigny*, 2006 ND 211, ¶ 19, 722 N.W.2d 515.

[¶19] Pemberton argued the error in this case was not harmless and his conviction must be reversed because he was convicted of a non-cognizable offense and he is being punished for conduct that is not a crime. The State argued that the instruction was not erroneous but did not address whether, if the instruction was erroneous, it was harmless.

[¶20] Our harmless error rule requires: "Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded." N.D.R.Crim.P. 52(a). The State bears the burden of proving that an error is harmless and does not warrant reversal. *State v. Curtis*, 2009 ND 34, ¶¶ 30, 33, 763 N.W.2d 443 (stating "mere speculation" is insufficient). The State presented no argument that the flawed jury instruction was harmless, and a party's failure to brief an issue ordinarily forfeits its opportunity to prevail on that basis. *Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 29, 776 N.W.2d 549. But we note that N.D.R.Crim.P. 52(a) states in mandatory terms that harmless errors "must be disregarded," and other courts have interpreted parallel rules to preserve an appellate court's discretion to consider harmless error on its own initiative in extraordinary cases. *Belcher v. State*, 464 P.3d 1013, 1023-25 (Nev. 2020) (relying on "arguably mandatory language" in harmless error rule); *State v. Porte*, 832 N.W.2d 303, 312–13 (Minn. Ct. App. 2013); *United States v.*

*Torrez-Ortega*, 184 F.3d 1128, 1136–37 (10th Cir. 1999) ("On this record, and in the complete absence of guidance from the government, we are unable to find such certainty of harmlessness beyond a reasonable doubt as to justify our discretionary initiation of full-scale harmless error review."); *United States v. Pryce*, 938 F.2d 1343, 1348 (D.C. Cir. 1991) ("Where the government does *not* raise the harmless error issue, I would deem errors 'harmless' only where satisfaction of that standard is beyond serious debate.").

[¶21] Evidence presented during the jury trial established Pemberton and the victim were involved in an incident at the victim's home on February 23, 2018, which resulted in the charges in this case. The victim testified Pemberton was staying at her residence on the night of February 22, 2018, and he was angry when he woke her up in the early morning hours of February 23, 2018. They got into an argument, and she became concerned about his behavior. He had possession of her phone, but she took it from him and called 911 before he tackled her and knocked the phone out of her hand. Pemberton pulled her around by her hair, threw her against a wall, hit her several times, and started strangling her. He was straddling or sitting on top of her and holding her neck down, she was not able to move, and she could not breathe. She then grabbed a screwdriver and hit him with it, causing him to remove his hand from her neck. She testified he then took the screwdriver from her, she rolled over onto her stomach, and he stabbed her multiple times in the head and neck area with the screwdriver. As she tried to get him to stop attacking her, she told him "you're killing me," to which he responded "Good."

[¶22] The 911 dispatcher testified she heard screaming and yelling during the call and a female yelled "Stop," "Get off of me," "You're killing me," "I'm bleeding out. Call 911." A recording of the 911 call was played for the jury. Officers who responded to the call testified Pemberton was still on top of the victim when they arrived at the scene and he did not move away from her until they announced their presence and told him to get off the victim. There was photographic evidence showing damage to sheetrock that was consistent with the victim's claim that Pemberton threw her into a wall; pictures of clumps of hair removed from the victim's head; and pictures of the victim's injuries, including the wounds to her head and neck from the screwdriver and scratches

8

and discoloration on her neck. The victim testified the redness on her throat and the finger shaped bruises on her neck shown in the pictures were from Pemberton strangling her. A doctor who treated her testified she had 13 or 14 stab wounds. A police officer involved in investigating the case testified that, based on his training, the location of where the victim was stabbed in the back of the head and neck constituted deadly force. Pemberton cross-examined some of the State's witnesses, but he did not testify or present any additional witnesses.

[¶23] During opening statements, Pemberton's attorney advised the jury that the evidence would be bad and would show that Pemberton was guilty of some of the crimes, but:

> [I]n the end, I think the evidence will show that these weren't stab wounds. There wasn't an intent to murder anyone. They were superficial wounds. They were bruises. Again, very bad, blood, things like that, but if Mr. Pemberton—I think will show—wanted to murder someone, as ugly and terrible as this is to talk about, he could have and would have done it during that time.

In its closing argument, the State argued:

> Certainly his behavior is abhorrent. Why did he escalate it? What's his causation? We don't know. Is it because she called 911 and now the police were going to become involved in his quasi-domestic situation? Is that what tips him over? Is that what causes him to assault this victim in a fashion that is absolutely frightening— horribly frightening.
>
> What does she think? "Lorenzo, you're killing me." "Good. Now settle the eff down." Did he intend to kill her when he entered? Perhaps, perhaps not.
>
> When you look at the escalation of his behavior, the area that he was stabbing, the number of times he did, the fact that he didn't stop until police announced entry. That's all evidence that you can use to support the finding of intent because we don't have an admission of it. So as jurors, you get to look at that and make your decision as the judges of fact.

Pemberton's attorney argued in closing:

Your Honor, counsel, ladies and gentlemen of the jury, this is probably going to sound really strange coming from me, but I'm going to ask you to find Mr. Pemberton guilty of aggravated assault. This case started as an aggravated assault case. As I said in my opening, this is an ugly case; this is a horrible case; this is a terrible case. It was charged as an aggravated assault case.

He emphasized: "These facts establish aggravated assault. They do. It's horrible." The defense argued the injuries were "superficial" and had healed, and asked the jury to find Pemberton did not intend to kill because "had he wanted to inflict enough force to kill somebody, he could have, or would have."

[¶24] At trial, the only disputed element of the offense was whether Pemberton had intended to cause the death of the victim. The instruction permitted the jury to convict for attempted knowing murder, and defined conduct as "'knowingly,' if when they engage in the conduct, they know or have a firm belief, unaccompanied by substantial doubt, that they are doing so, whether or not it is his purpose to do so." We have held that an attempt offense requires an intent to complete the underlying crime. *Dominguez v. State*, 2013 ND 249, ¶ 22. Where the underlying crime is murder, an intent to kill is required. *Id.* Here, the jury had sufficient evidence to find such intent beyond a reasonable doubt, but it was instructed that it could convict whether or not it was Pemberton's purpose to cause death. The instructions removed the requirement that the jury find intent to cause death, and as a result they allowed Pemberton's admission to aggravated assault to be a fully sufficient basis to convict him for attempted murder. These circumstances bring this case within the scope of *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) ("The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.").

[¶25] Our determination of whether an error is harmless looks at the effect of the error on this jury, rather than speculating whether a hypothetical jury

would convict the defendant absent the error. "[T]he problem would not be cured by an appellate court's determination that the record evidence *unmistakably* established guilt, for that would represent a finding of fact by judges, not by a jury. As with a directed verdict, 'the error in such a case is that the wrong entity judged the defendant guilty.'" *Carella v. California*, 491 U.S. 263, 269 (1989) (Scalia, J., concurring) (quoting *Rose v. Clark*, 478 U.S. 570, 578 (1986)). The jury was instructed that it could convict Pemberton of attempted murder even if it agreed with his sole theory of defense that it was not his purpose to cause death. On this record, we can only speculate whether the jury found Pemberton acted without intent, as Pemberton argued, but convicted him anyway because the instruction allowed it, or whether the jury found he had in fact acted with intent to cause death. The determination of Pemberton's culpability must be made by the jury. We reverse the district court's order denying Pemberton's application for postconviction relief.

IV

[¶26] Pemberton argues he received ineffective assistance of counsel from his trial counsel based on the issues he raised in his prior appeal and which this Court reviewed for obvious error, including the failure to object to the non-cognizable attempted murder offense contained in the original information, failure to object to an amendment to the information, failure to request a preliminary hearing on the new felony charge, failure to object to the lack of a full admonishment of the jury, and the failure to object to the verdict form.

[¶27] These alleged errors were raised in Pemberton's direct appeal and reviewed for obvious error. *See Pemberton*, 2019 ND 157, ¶¶ 1, 7-8. We rejected his arguments at that time. *Id.* at ¶ 27. Those issues are barred by res judicata and cannot be revived by combining the arguments with allegations of ineffective assistance of counsel. *See Hunter v. State*, 2020 ND 224, ¶¶ 5-8, 949 N.W.2d 841.

[¶28] The parties' remaining arguments are either without merit or unnecessary to our opinion. We reverse the district court's order denying Pemberton's application for postconviction relief.

[¶29] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Jerod E. Tufte

**McEvers, Justice, concurring and dissenting.**

[¶30] I agree with the majority opinion concluding attempt to "knowingly" commit a murder is a non-cognizable offense. Majority at ¶¶ 1-17. I also agree that Pemberton's arguments of ineffective assistance of counsel are barred by res judicata. Majority at ¶¶ 26-27. Where I diverge with the majority is in concluding the error is not harmless without allowing the district court to consider the issue.

[¶31] Pemberton argues the error in this case was not harmless and his conviction must be reversed because he was convicted of a non-cognizable offense and he is being punished for conduct that is not a crime. The State claims there was evidence from which the jury could have found Pemberton guilty of intentional murder, including evidence that Pemberton strangled the victim, that he struck her in the head and neck area 13 times with a screwdriver, that the victim told Pemberton he was killing her to which he responded, "Good," and that the attack continued until police arrived. As noted by the majority, there are facts under which Pemberton could have been convicted of intentional attempted murder. Majority at ¶ 22.

[¶32] I concede we have the authority to decide whether the error was harmless. Other courts have applied a similar standard and held errors in instructing the jury about attempted murder did not constitute reversible

error. *See State v. Casey*, 82 P.3d 1106, 1116-18 (Utah 2003) (holding any error in instructing the jury it could convict the defendant of attempted murder if he intentionally or knowingly attempted to take the life of another did not constitute plain error, and also holding no harm resulted from any error with the instruction because no reasonable jury could have concluded the defendant acted knowingly without concluding that he acted intentionally based on the evidence presented). *Cf. Rosales v. State*, 23 N.E.3d 8, 15-16 (Ind. 2015) (reversing attempted murder conviction, holding error in jury instruction was a fundamental error due to prosecution's repeated reliance on the inaccurate instruction, including telling the jury that specific intent to kill was not required).

[¶33] However, I would be inclined to send the matter back to the district court to determine whether the error is harmless, because neither party argued harmless error to the district court. *See Hallin v. Inland Oil & Gas Corp.,* 2017 ND 254, ¶ 16, 903 N.W.2d 61 (stating "[a]rguments not made to the district court will not be considered on appeal"). The purpose of appeal is to review the actions of the district court, rather than to give the appellant an opportunity to develop new theories or strategies. *State v. Dubois,* 2019 ND 284, ¶ 8, 936 N.W.2d 380. The exception to this general rule is obvious error. *Id.* There can be no obvious error by the district court because we are deciding for the first time that a conviction for attempted murder which may have been based on knowing conduct is a non-cognizable offense. Under similar circumstances, we have remanded to the district court to determine whether the error was harmless.

[¶34] In *Dominguez v. State*, 2013 ND 249, ¶ 26, 840 N.W.2d 596, we acknowledged a conviction does not have to be automatically reversed if the jury was instructed on multiple theories of guilt and one theory is invalid. Similar to *Dominguez,* here we are deciding for the first time a particular offense is a non-cognizable offense and the jury was instructed on different culpability levels, one which could result in a lawful conviction, depending on the facts found by the jury. *Id.* at ¶ 25. We did not decide in *Dominguez* whether the error was harmless, rather we remanded the issue to the district court. *Id.* at ¶ 27.

[¶35] This will place a heavy burden on the State, but the error does not require reversal if the State proves the error was harmless beyond a reasonable doubt. *Dominguez,* 2013 ND 249, ¶ 26. I would prefer the district court that received the evidence and heard the arguments decide the issue, and would remand to the court to determine whether the error was harmless beyond a reasonable doubt.

[¶36] Lisa Fair McEvers