# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 226

Jean-Michael Kisi,                                    Petitioner and Appellant

v.

State of North Dakota,                                Respondent and Appellee

## No. 20230074

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Jean-Michael Kisi, self-represented, Bismarck, N.D., petitioner and appellant; submitted on brief.

Nathan K. Madden, Assistant State's Attorney, Williston, N.D., for respondent and appellee; submitted on brief.

**Tufte, Justice.**

[¶1]   Jean-Michael Kisi appeals from orders dismissing in part and denying in part his application for postconviction relief. He argues the district court erred because he was convicted of a non-cognizable offense, accomplice to attempted murder. He also argues the district court erred by dismissing his other claims for relief on grounds that he received ineffective assistance of counsel, the court followed improper trial procedure, and the State committed prosecutorial misconduct. We affirm.

I

[¶2]   A jury convicted Kisi of gross sexual imposition and accomplice to attempted murder. Kisi appealed the judgment, and we affirmed. *State v. Kisi*, 2018 ND 147, ¶ 1, 913 N.W.2d 767.

[¶3]   Kisi applied for postconviction relief. He alleged the conviction of accomplice to attempted murder is illegal because a "knowing" murder under N.D.C.C. § 12.1-16-01(1)(a) cannot be the underlying offense for an accomplice to an attempt offense. He also argues he received ineffective assistance of counsel, the district court followed improper trial procedure, and the State committed prosecutorial misconduct.

[¶4]   The State responded to Kisi's application and moved for summary dismissal. The district court granted the State's motion in part, and dismissed Kisi's claims of ineffective assistance of counsel, improper trial procedure, and prosecutorial misconduct on the basis that Kisi had raised no genuine issue of material fact. The court ordered an evidentiary hearing on the issue of the non-cognizable offense. After the hearing, the court concluded accomplice to attempted knowing murder is a non-cognizable offense, but the erroneous jury instruction was harmless beyond a reasonable doubt because it determined this jury convicted on attempted intentional murder. The court denied Kisi's application for postconviction relief. Kisi appeals.

## II

[¶5] "Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure." *Myers v. State*, 2017 ND 66, ¶ 7, 891 N.W.2d 724 (quoting *Wacht v. State*, 2015 ND 154, ¶ 6, 864 N.W.2d 740). The standard of review in a postconviction proceeding is well-established:

> A trial court's findings of fact in post-conviction relief proceedings will not be disturbed unless they are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has been made. Questions of law are fully reviewable on appeal of a post-conviction proceeding.

*Olson v. State*, 2019 ND 135, ¶ 7, 927 N.W.2d 444 (citations omitted). "The interpretation of a statute is a question of law, which is fully reviewable on appeal." *Pemberton v. State*, 2021 ND 85, ¶ 7, 959 N.W.2d 891.

[¶6] A person convicted and sentenced for a crime may apply for postconviction relief upon the ground that "[t]he conviction was obtained or the sentence was imposed in violation of the laws or the Constitution of the United States or of the laws or Constitution of North Dakota." N.D.C.C. § 29-32.1-01(1)(a); *Dominguez v. State*, 2013 ND 249, ¶ 23, 840 N.W.2d 596.

## III

[¶7] Kisi argues the district court erred by denying his application for postconviction relief, because accomplice to attempted knowing murder is a non-cognizable offense and the State did not show the inclusion of "knowing" in the jury instructions was harmless error. Whether accomplice to attempted knowing murder is a non-cognizable offense is a question of law fully reviewable on appeal.

[¶8] Kisi was charged with accomplice to attempted murder under N.D.C.C. §§ 12.1-03-01 and 12.1-16-01(1)(a). The relevant part of the criminal attempt statute, N.D.C.C. § 12.1-06-01(1), states:

2

A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

A person is guilty of murder under N.D.C.C. § 12.1-16-01(1)(a) if the person "[i]ntentionally or knowingly causes the death of another human being." A person engages in conduct "intentionally" "if, when he engages in the conduct, it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(a). A person engages in conduct "knowingly" "if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(b).

[¶9] The essential elements instruction read: "Jean-Michael Kisi, acting with the kind of culpability otherwise required for the *intentional or knowing* killing of [victim] a human being . . . [a]ided David Mbulu in committing the offense of attempted murder." (Emphasis added.) The jury instructions explain:

A person who, intending that the offense of Murder be committed, commands, induces, procures, or aids another to commit it, or being a co-conspirator whose association with the offense matches such actions is guilty of Accomplice to Attempted Murder wherein the actions of the parties do not result in the death of the intended target, but demonstrate an intent to kill the intended target.

A

[¶10] An attempt offense requires an intent to complete the underlying criminal offense. *Pemberton*, 2021 ND 85, ¶ 24; *Dominguez*, 2013 ND 249, ¶ 22. Where the underlying offense is murder, an intent to kill is required. *Pemberton*, at ¶ 24. "The offense of murder requires the defendant to cause the death of another; therefore, in order to intend to complete the commission of the offense for purposes of attempted murder, the defendant must have an intent to cause the death of another." *Id.* at ¶ 11. An attempted *knowing* murder is not a cognizable offense. *Id.* at ¶¶ 11, 24.

3

[¶11] Our case law distinguishes intentional murder from knowing murder. *See State v. Swanson*, 2019 ND 181, 930 N.W.2d 645. The statutory definition of knowingly includes "when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, *whether or not it is his purpose to do so.*" N.D.C.C. § 12.1-02-02(1)(b) (emphasis added). "Purpose" has been defined as "[t]hat which one sets before him to accomplish." *Black's Law Dictionary* 1400 (4th ed. 1968). It is "[a]n objective, goal, or end." *Black's Law Dictionary* 1493 (11th ed. 2019). "Intention" and "purpose" are synonyms. *Webster's Third New International Dictionary* 1847 (16th ed. 1971). "As such, the term knowingly, when used in conjunction with N.D.C.C. § 12.1-16-01(1)(a), permits an individual to be convicted of a murder when they did not have the purpose (synonymous with intent) to cause the death of another human being." *Swanson*, 2019 ND 181, ¶ 13. For this reason, the inclusion of "knowingly" in the jury instruction may render a conviction illegal as a non-cognizable offense. *See, e.g., Swanson*, 2019 ND 181, ¶ 15; *State v. Borner*, 2013 ND 141, ¶ 7, 836 N.W.2d 383.

[¶12] In *Pemberton*, 2021 ND 85, ¶¶ 13, 17, where we held attempted *knowing* murder is not a cognizable offense, we noted the jury instructions included the word "knowingly," which allowed the jury to find the defendant guilty of a non-cognizable offense. *See also Mbulu v. State*, 2022 ND 138, ¶ 26, 977 N.W.2d 305 (reversing on a separate issue but allowing "the parties an opportunity to address the *Pemberton* opinion" on Mbulu's conspiracy to commit murder charge). We held under the instructions in *Pemberton*, the jury could have found Pemberton guilty of attempted murder without finding he intended to kill another human being. In that case, the instructions allowed the jury to find Pemberton guilty of a non-cognizable offense. Our decision in *Pemberton* went on to consider whether any error was harmless beyond a reasonable doubt as contemplated in *Dominguez*, 2013 ND 249.

B

[¶13] The State argues inclusion of "knowing" in the jury instructions was harmless error because the intent to kill was clear by the intentional nature of Kisi's conduct.

4

[¶14] "When there is evidence of an intent to kill, a person can be convicted of attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(a) for attempting to knowingly or intentionally cause the death of another human being." *Dominguez*, 2013 ND 249, ¶ 19. "[I]f the jury was instructed on multiple theories of guilt and one theory was invalid," a conviction is not automatically reversed. *Pemberton*, 2021 ND 85, ¶ 18. The error does not require reversal if the State proves the error was harmless beyond a reasonable doubt. *Id*.

[¶15] We have explained:

> Harmless error is any error, defect, irregularity or variance which does not affect substantial rights. Stated simply, harmless error is error that is not prejudicial. If the error is one of constitutional magnitude, we must determine whether the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence. A federal constitutional error is harmless if we are convinced the error did not contribute to the verdict.

*Pemberton*, 2021 ND 85, ¶ 18 (cleaned up). "Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded." N.D.R.Crim.P. 52(a). "The State bears the burden of proving that an error is harmless and does not warrant reversal." *Pemberton,* at ¶ 20.

[¶16] Our determination of whether an error is harmless beyond a reasonable doubt considers the probable effect of the error in light of all the evidence. *State v. Kruckenberg*, 2008 ND 212, ¶ 15, 758 N.W.2d 427. We look at the effect of the error on the jury in that case. *Pemberton*, 2021 ND 85, ¶ 25. Here, the evidence shows, beyond a reasonable doubt, the jury convicted Kisi of attempted intentional murder.

[¶17] The State presented video evidence, filmed by the other individual on the day of the attack, showing Kisi claiming if the victim "placed her hand on" him they would assault her, leave her on the side of the road, and run her over with the car. The victim testified Kisi drove her to the "middle of nowhere." The victim was told to get out of the car by the other individual and she obeyed. The other individual caught her and started to strangle her. Kisi interrupted

the strangling and removed some of the victim's clothes. Both the victim and Kisi testified the other individual intended to kill the victim.

[¶18] The victim further testified Kisi directed the other individual "to get something out of the trunk," and Kisi held her down for at least a minute while the other individual retrieved a car jack. Then the other individual beat the victim's head multiple times. The evidence presented directly established intent.

[¶19] Other states have addressed this issue, holding an error in a jury instruction does not constitute reversible error when the jury could not rationally conclude the defendant acted knowingly without concluding he acted intentionally based on the evidence. *See State v. Casey*, 82 P.3d 1106, 1116-18 (Utah 2003). Evidence is used to establish intent.

> In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury. *See, e.g., Lamb v. Jernigan*, 683 F.2d 1332, 1342–1343 (CA11 1982), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983). In that event the erroneous instruction is simply superfluous: the jury has found, in *Winship's* words, "every fact necessary" to establish every element of the offense beyond a reasonable doubt. *See Connecticut v. Johnson*, *supra*, at 460 U.S. 97, 103 S.Ct., at 983 (POWELL, J., dissenting); Jeffries & Stephan, Defenses, Presumptions, and Burden of Proof in the Criminal Law, 88 Yale L.J. 1325, 1388, n.192 (1979).

*Rose v. Clark*, 478 U.S. 570, 580-81 (1986).

[¶20] We must also consider the closing argument to the jury. *See, e.g.*, *Rosales v. State*, 23 N.E.3d 8, 15-16 (Ind. 2015) (explaining when an erroneous jury instruction is specifically argued to the jury, it is not harmless error). In its closing argument, the State argued only intentional murder:

> Remember, you're in an isolated area. There's nobody around. She's the only witness. You get rid of witnesses.
> . . . .
>        Murder is the knowing or intentional killing of someone else, and when you get to what's known as attempted murder, it's

basically your intending to get there. You do steps, but you just don't quite get it done.

. . . .

You have that. You have the chokehold, the stranglehold. Even the Defendant was talking about her starting to turn colors. That's not good for the human body either. The petechiae where you got the little blood blister type things. You heard Dr. Li talk about it can lead to vascular problems, things of that nature.

And you have the cold. It's not good to be outside in those temperatures in a t-shirt. Nobody else that you heard from in this entire trial was willing to be outside in a t-shirt. . . .

Basically, they did everything they needed to do to get [the victim] dead. She was tougher than they thought. She survived what happened out there.

[¶21] The State did not rely on the "knowing" part of the jury instruction in its argument. The State presented facts to show intent and argued the acts were intentional. *See Pemberton*, 2021 ND 85, ¶ 23 (reversing because the jury was instructed it could convict on attempted murder even if it agreed the defendant had not intended to commit murder). Here, the State's evidence and argument were directed only at intentional murder.

[¶22] Presented with this overwhelming evidence and the State's argument regarding intent, there is no basis on which this jury could have concluded Kisi acted knowingly rather than intentionally. The erroneous inclusion of "knowing" in the jury instruction was harmless beyond a reasonable doubt.

IV

[¶23] Kisi argues his trial counsel provided ineffective assistance when he made statements during closing argument which were harmful to the defense and needlessly elicited testimony from C.B. on the issue of penetration, which violated Kisi's right to a fair trial.

[¶24] The district court summarily disposed of Kisi's ineffective assistance of counsel claim. A district court may grant summary disposition of a petition for postconviction relief "if the application, pleadings, any previous proceeding, discovery, or other matters of record show that no genuine issues exist as to

any material fact and the moving party is entitled to judgment as a matter of law." N.D.C.C. § 29-32.1-09.1(1) (formerly § 29-32.1-09(3)).

> This Court reviews an appeal from summary dismissal of post-conviction relief as it would review an appeal from a summary judgment. *Myers*, [2017 ND 66,] ¶ 7. "The party opposing the motion for summary dismissal is entitled to all reasonable inferences to be drawn from the evidence and is entitled to an evidentiary hearing if a reasonable inference raises a genuine issue of material fact." *Id.*

*Wootan v. State*, 2023 ND 151, ¶ 4, 994 N.W.2d 347. "Generally, a claim of ineffective assistance of counsel is unsuited to summary disposition without an evidentiary hearing." *Id.* at ¶ 6.

[¶25] Kisi's ineffective assistance of counsel claims depend only on events that occurred on the record during trial. We reverse a summary dismissal when evidence outside the record is required to evaluate a claim. *See, e.g., Wootan v. State*, 2023 ND 151, ¶ 9, (reversing summary judgment where petitioner's claim relied on advice to him by his attorney that was not in the record); *Mbulu*, 2022 ND 138, ¶ 15 (reversing summary disposition where ineffective assistance of counsel claim relied on facts not in the underlying record). Kisi's claims that his counsel's closing argument and questioning of the victim were prejudicial are both fully reviewable in the underlying record. An evidentiary hearing was not necessary to resolve the claims.

[¶26] To prevail on a claim of ineffective assistance of counsel, the applicant for post-conviction relief must show: "(1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Yoney v. State*, 2021 ND 132, ¶ 7, 962 N.W.2d 617 (quoting *Olson*, 2019 ND 135, ¶ 19). "There is a presumption that the counsel's representation fell within the wide range of reasonable professional assistance." *Mbulu*, 2022 ND 138, ¶ 8.

[¶27] The district court reviewed the record of the trial proceeding as permitted under § 29-32.1-09.1(1) for summary disposition and concluded there was no genuine issue of fact. The district court then summarily dismissed

8

the claim that the trial attorney made harmful statements, because the trial transcript showed the attorney's closing statements complimenting the prosecutors and contradicting Kisi's testimony during direct examination were trial strategy.

[¶28] Kisi argues trial counsel was ineffective in his cross-examination of the victim by asking questions that elicited statements she had been penetrated when she had not testified to that effect on direct examination. The district court concluded that the questions were trial strategy to confirm Kisi's penis did not penetrate the victim. On direct examination, the victim testified that Kisi was "messing around down there with his hands." The district court characterized the transcript as "unclear whether [Kisi] used any other body part." Prior to the victim's testimony, an EMS report was received without objection, which the court accurately described as quoting the victim stating Kisi "put his fingers inside of her." The record at that point also included testimony that Kisi had the victim's DNA on his right middle finger and the head of his penis. In its order dismissing this claim, the court noted the evidence showed "the victim's DNA was already found on one finger." The jury had also heard testimony that gravel was found in the victim's vagina. The district court had to determine, based on the circumstances at the time, including the evidence already in the record, whether there was a genuine issue of fact as to (1) whether asking these questions was below the objective standard of reasonable representation, and, if so, (2) whether there was a reasonable probability of a different result. Whether counsel provides ineffective assistance by asking a question that may or may not elicit a desired answer is not determined in hindsight by the answer but prospectively by whether the relative risk of a harmful answer is outweighed by the likelihood of a helpful answer—a matter of trial strategy and tactics. See *State v. Tippets*, 501 P.3d 570, 577-78 (Utah Ct. App. 2021) (explaining counsel's effectiveness in cross-examining victim is determined by reasonable expectations about the answer, taking calculated risks in weighing the potential value against the perceived risk); *Hodge v. Haeberlin*, 579 F.3d 627, 641-42 (6th Cir. 2009) ("The wisdom of counsel's strategy must be judged based on the circumstances as a whole as they stood at the time counsel made his decisions."); *State v. Shelnutt*, 879 S.E.2d 510, 518-19 (Ga. App. 2022) (explaining that cross-examination is a matter of tactics and will rarely constitute ineffective assistance because it

9

should not be evaluated by hindsight based on the answers elicited). On this record, the district court correctly concluded there was no genuine issue of fact as to whether counsel's cross-examination constituted part of an objectively reasonable trial strategy.

[¶29] Kisi raised no genuine issue of material fact, and counsel's representation did not fall below an objective standard of reasonableness. Summary disposition was appropriate.

V

[¶30] Kisi also argues the district court erred by denying his application for postconviction relief on grounds the court followed improper trial procedure and the State committed prosecutorial misconduct.

[¶31] The district court granted summary disposition on these claims. On our review of the record, we agree with the district court that Kisi did not raise a genuine issue of material fact on these claims. We summarily affirm the district court order dismissing the remaining issues under N.D.R.App.P. 35.1(a)(6).

VI

[¶32] We affirm the district court order dismissing in part and denying in part Kisi's application for postconviction relief.

[¶33] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr