IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2024 ND 187

Daniel Arturo Samaniego,                           Petitioner and Appellant

v.

State of North Dakota,                            Respondent and Appellee

No. 20240090

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Kiara C. Kraus-Parr, Grand Forks, ND, for petitioner and appellant.

Renata J. Olafson Selzer (argued), Assistant State's Attorney, and Dustin Hennings (on brief), under the Rule on Limited Practice of Law by Law Students, Fargo, ND, for respondent and appellee.

**Samaniego v. State**
**No. 20240090**

**Bahr, Justice.**

[¶1]   Daniel Samaniego appeals from the district court judgment denying his application for postconviction relief. Samaniego argues the court erred in finding he did not meet the heavy burden of proving his claim of ineffective assistance of counsel. We affirm the judgment.

I

[¶2]   In May 2020, the State charged Samaniego with one count of gross sexual imposition, a class AA felony. The district court held a jury trial in May 2021. On direct examination, the State asked its witness, a detective, "Throughout the course of your investigation, did you at any point interview the Defendant?" The detective responded, "I attempted to interview the Defendant." Samaniego's trial counsel objected on the ground the question was beyond the scope of redirect; the court sustained the objection. The jury found Samaniego guilty of gross sexual imposition.

[¶3] Following the verdict, Samaniego's trial counsel sent the jurors questionnaires. Before sentencing, trial counsel received feedback from a juror that jurors had discussed that they felt Samaniego "should have testified in his own defense[.]" Samaniego's trial counsel did not move for a new trial based on potential jury misconduct, nor did she bring the issue to the district court's attention.

[¶4]   In September 2021, Samaniego appealed the criminal judgment. *State v. Samaniego*, 2022 ND 38, 970 N.W.2d 222. On appeal, Samaniego argued there was insufficient evidence to support the conviction and the State engaged in prosecutorial misconduct. *Id*. at ¶ 1. This Court affirmed, finding there was sufficient evidence to support the jury's verdict "and the issue of prosecutorial misconduct was not sufficiently preserved for appeal or argued on appeal." *Id*. at ¶ 17.

[¶5]  In May 2023, Samaniego filed an application for postconviction relief, alleging his trial counsel provided ineffective assistance of counsel. Samaniego argued his counsel failed to preserve the issue of alleged prosecutorial misconduct for appeal and failed to move for a new trial based on alleged prosecutorial misconduct and jury misconduct. The district court held an evidentiary hearing on the application in January 2024; Samaniego and his former trial counsel testified at the hearing. In February 2024, the court denied the application.

II

[¶6]  Postconviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure to the extent the rules do not conflict with the Uniform Postconviction Procedure Act, N.D.C.C. ch. 29-32.1. *Vogt v. State*, 2022 ND 163, ¶ 5, 978 N.W.2d 727. In postconviction proceedings, the applicant bears the burden to establish the grounds for relief. *Id.* This Court has explained its standard of review after an evidentiary hearing in postconviction proceedings:

> A trial court's findings of fact in post-conviction relief proceedings will not be disturbed unless they are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has been made. Questions of law are fully reviewable on appeal of a post-conviction proceeding.

*Urrabazo v. State*, 2024 ND 67, ¶ 6, 5 N.W.3d 521 (quoting *Kisi v. State*, 2023 ND 226, ¶ 5, 998 N.W.2d 797).

III

[¶7]  This Court's standard of review of a claim of ineffective assistance of counsel in a postconviction relief proceeding is well-established:

> To prevail on a claim for ineffective assistance of counsel, the applicant must show: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The question of ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal.

*Urrabazo*, 2024 ND 67, ¶ 13 (quoting *Koon v. State*, 2023 ND 247, ¶ 21, 1 N.W.3d 593).

[¶8] "To prove the first prong, the defendant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Archambault v. State*, 2024 ND 38, ¶ 6, 4 N.W.3d 212 (cleaned up). "To establish the second prong, the defendant must specify how and where trial counsel was incompetent and the probable different result. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Koon*, 2023 ND 247, ¶ 22).

[¶9] "Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so." *Rourke v. State*, 2018 ND 137, ¶ 6, 912 N.W.2d 311 (quoting *Booth v. State*, 2017 ND 97, ¶ 8, 893 N.W.2d 186). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* (quoting *Booth*, at ¶ 8).

A

[¶10] Samaniego argues his trial counsel was ineffective for not preserving for appellate review the issue of alleged prosecutorial misconduct, and for not moving for mistrial on the ground of prosecutorial misconduct. Samaniego claims the State's question to the detective violated his Fifth Amendment right to remain silent.

[¶11] Addressing prong two of the *Strickland* test, the district court found Samaniego did not show a reasonable probability that, but for trial counsel's alleged error, the result of the proceeding would have been different. Regarding the prosecutor's question to the detective, the court noted "[t]he question did not suggest to the jury that [Samaniego] refused to be interviewed or invoke[d] the Fifth Amendment." The court further wrote "it is also hard to ascertain at what

3

point in time [the detective] requested an interview with [Samaniego] or which interview he was referring to, as in whether it was actually pre or post-*Miranda*. There could have been multiple times [the detective] attempted to interview [Samaniego]."

[¶12] "To establish prosecutorial misconduct, an applicant must show (1) the prosecutor's actions constitute misconduct, and (2) the misconduct had a prejudicial effect." *Gaddie v. State*, 2024 ND 170, ¶ 9, 11 N.W.3d 21. "The prosecutorial misconduct must be significant enough to infringe upon the defendant's right to a fair trial." *Id*. "In making that determination, this Court decides if the conduct, 'in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights.'" *State v. Lyman*, 2022 ND 160, ¶ 8, 978 N.W.2d 734 (quoting *State v. Foster*, 2020 ND 85, ¶ 17, 942 N.W.2d 829); *see also Greer v. Miller*, 483 U.S. 756, 765-66 (1987) ("When a defendant contends that a prosecutor's question rendered his trial fundamentally unfair, it is important 'as an initial matter to place th[e] remar[k] in context.'" quoting *Darden v. Wainwright*, 477 U.S. 168, 179 (1986)).

[¶13] "Testimony or argument about a defendant's post-arrest silence may constitute an improper comment about a defendant's invocation of the right to remain silent." *State v. Watts*, 2024 ND 158, ¶ 22, 10 N.W.3d 563 (quoting *State v. Gaede*, 2007 ND 125, ¶ 18, 736 N.W.2d 418). "A comment on the defendant's post-arrest silence is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the United States Constitution." *Id.* (quoting *Wickham v. State*, 2022 ND 116, ¶ 6, 974 N.W.2d 646).

[¶14] The prosecutor's question to the detective did not directly implicate Samaniego's Fifth Amendment right to remain silent. The prosecutor asked the detective, "Throughout the course of your investigation, did you at any point interview the Defendant?" The question called for a "yes" or "no" response. Moreover, as noted by the district court, the question was not limited to what occurred post-arrest. The detective could have interviewed or attempted to interview Samaniego pre-arrest. Samaniego's trial counsel was appropriately concerned, recognizing the question could take them "down a rabbit hole" that implicated Samaniego's "Fifth Amendment right to not incriminate himself."

However, the question did not implicate Samaniego's Fifth Amendment rights and was not prosecutorial misconduct.

[¶15] The detective's response also did not directly implicate Samaniego's Fifth Amendment right to remain silent. Although the detective testified he attempted to interview Samaniego, there is no indication the attempt was before or after Samaniego's arrest. *See Watts*, 2024 ND 158, ¶ 26 (holding defendant did not satisfy burden of proof by failing to identify if State's questions regarding defendant's discussion with law enforcement was pre- or post-arrest); *see also U.S. v. Frazier*, 408 F.3d 1102, 1110-11 (2005) (holding use of a defendant's post-arrest, pre-*Miranda* silence as evidence of guilt is not a Fifth Amendment violation). There is also no indication the detective was not able to interview Samaniego due to him exercising his right to remain silent or invoking his right to counsel. Multiple reasons exist why an officer may not be able to interview an individual.

[¶16] We conclude Samaniego was not prejudiced by his trial counsel's failure to preserve the issue of prosecutorial misconduct because the complained of question does not constitute prosecutorial misconduct. The district court did not err in finding Samaniego did not show a reasonable probability that the result of the proceeding would have been different but for his trial counsel's alleged deficient performance.

B

[¶17] Samaniego argues his trial counsel was ineffective for failing to move for a new trial based on alleged juror misconduct. Samaniego claims he is entitled to a new trial because the jurors allegedly discussed that they felt Samaniego should have testified.

[¶18] Addressing this issue, the district court concluded that Samaniego failed to establish the second prong of his ineffective assistance of counsel claim. The court held trial counsel's "statements about what a juror conveyed on a juror questionnaire regarding what the jury discussed is hearsay, and [Samaniego's] statements about the juror's comments are hearsay upon hearsay." Citing N.D.R.Ev. 606(b)(1) and *State v. Hidanovic*, 2008 ND 66, 747 N.W.2d 463, the court

explained it could not receive a juror declaration or testimony on this issue even if it had been offered. Finally, the court noted it instructed the jury not to draw any inference from Samaniego's silence and that jurors are presumed to follow instructions. The court wrote it is "mere speculation that the juror's comments reflect the basis for the jury's verdict[.]"

[¶19] We agree with the district court's conclusion Samaniego did not satisfy prong two of the *Strickland* test. As a matter of law, Samaniego was not prejudiced by his trial counsel's decision not to bring the motion because the district court could not have granted the motion under the facts of this case.

[¶20] Under N.D.R.Crim.P. 33, a defendant may move for a new trial "if the interest of justice so requires." Rule 33(b)(2), N.D.R.Crim.P., states, "Any motion for a new trial based on jury misconduct must be supported by a declaration." There was no admissible declaration trial counsel could have filed in support of a motion for new trial.

[¶21] The district court properly held the witnesses' testimony regarding a juror's statement was inadmissible hearsay. The district court could have also properly rejected the testimony under Rule 606(b), N.D.R.Ev. "[A]nalysis of juror misconduct under N.D.R.Crim.P. 33(b) requires consideration of N.D.R.Ev. 606(b)[.]" *State v. Yarbro*, 2014 ND 164, ¶ 17, 851 N.W.2d 146; *see also Hidanovic*, 2008 ND 66, ¶ 12 ("The analysis of juror misconduct under N.D.R.Crim.P. 33(b) is juxtaposed with N.D.R.Ev. 606(b)[.]").

[¶22] Rule 606(b)(1), N.D.R.Ev., prohibited the district court from receiving evidence or a juror declaration regarding statements made during the jury's deliberations. Rule 606(b)(1) states:

> During an inquiry into the validity of a verdict . . . , a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . . . The court may not receive a juror's declaration or evidence of a juror's statement on these matters.

N.D.R.Ev. 606(b)(1). A juror may testify whether "extraneous prejudicial information was improperly brought to the jury's attention" or "an outside influence was improperly brought to bear on any juror." N.D.R.Ev. 606(b)(2)(A), (B).

[¶23] "Rule 606(b), N.D.R.Ev., generally prohibits a juror from testifying about matters or statements occurring during the course of the jury's deliberations." *Hidanovic*, 2008 ND 66, ¶ 13. "An attempt to use juror affidavits to demonstrate how the jury arrived at its decision falls precisely within the confines of the rule prohibiting impeachment of the jury verdict." *State v. Knight*, 2023 ND 130, ¶ 17, 993 N.W.2d 528 (quoting *Andrews v. O'Hearn*, 387 N.W.2d 716, 719 (N.D. 1986)); *see also Hidanovic*, at ¶ 18 ("Our decisions have consistently rejected jurors' affidavits about the effect of internal deliberations."). "Unless the juror's evidence reflects an external source, our rule and precedents do not permit evidentiary use of a juror's generalizations made during jury deliberations to invalidate the verdict." *Hidanovic*, at ¶ 18; *see also State v. Clark*, 1997 ND 199, ¶ 7, 570 N.W.2d 195 ("Rule 606(b), N.D.R.Ev., prohibits a juror from testifying as to the mental processes inherent in arriving at a verdict, but allows jurors to testify as to whether outside influences were brought to bear upon a juror, or if the verdict was arrived at by chance.").

[¶24] "[S]trong policies protect most internal discussions of the jury from judicial scrutiny." *Hidanovic*, 2008 ND 66, ¶ 18. "The purpose of N.D.R.Ev. 606(b) is to preserve the finality of verdicts, to protect the privacy and integrity of jury deliberations, and to prevent jury harassment and maintain public confidence in the jury system." *Id*. at ¶ 13. "Rule 606(b), N.D.R.Ev., embodies a balance between the desire for finality and certainty on one hand and the need to achieve an acceptable level of fairness and accuracy on the other hand, and if a verdict is the result of extraneous prejudicial information or outside influence, the balance favors fairness and accuracy." *Id*. In *Hidanovic*, we explained:

> Although injustice may at times result from thus holding verdicts solemnly rendered unassailable by affidavits of jurors . . . as to their reasons for agreements, we deem it the better rule, and subject to less liability to injustice, that a verdict actually rendered shall be conclusively deemed to be a verdict, and beyond impeachment by

7

> the declaration of a juror as to a mental condition existing when he
> agreed upon a verdict, or as to his reasons for so agreeing.

*Id.* at ¶ 20 (quoting *Andrews*, 387 N.W.2d at 719); *see also Warger v. Shauers*, 574 U.S. 40, 44-48 (2014) (discussing the history of Fed.R.Evid. 606(b) and the common-law rule's historical purpose of "both promoting the finality of verdicts and insulating the jury from outside influences"); *Tanner v. United States*, 483 U.S. 107, 119-21 (1987) (discussing the "[s]ubstantial policy considerations [that] support the common-law rule against the admission of jury testimony to impeach a verdict," upon which Fed.R.Evid. 606(b) is grounded).

[¶25] In *Hidanovic*, the defendant argued he was entitled to a new trial because of juror misconduct during jury deliberations. 2008 ND 66, ¶ 7. The defendant offered an affidavit from one of the jurors to support his argument, which included a statement about the juror's discussion with the other jurors. *Id*. The State submitted additional affidavits from the other jurors stating their recollections of the conversation. *Id.* at ¶ 8. The district court denied the motion for new trial and concluded the affidavits were inadmissible under Rule 606(b), N.D.R.Ev. *Id.* at ¶ 9. We affirmed. *Id.* at ¶ 28. In support of the court's denial, this Court cited to several authorities, stating it is a matter of strong public policy to "preclude[] examination of the internal discussions and mental processes of jury deliberations." *Id*. at ¶ 21.

[¶26] Had Samaniego's trial counsel filed a motion for new trial on the ground of alleged jury misconduct, *Hidanovic* would have dictated that the district court deny the motion. Rule 606(b) prohibited the court from receiving evidence regarding statements made during the jury's deliberations or jurors' mental processes concerning the verdict. Samaniego cannot impeach the jury's verdict based on a juror's statement regarding statements made during deliberations. Thus, a motion under Rule 33(b), N.D.R.Crim.P., on the ground of jury misconduct would not have been successful, meaning Samaniego was not prejudiced by his trial counsel's decision not to move for a new trial.

[¶27] We conclude the district court did not err in finding Samaniego did not meet his burden of proving prong two of his ineffective assistance of counsel claim.

[¶28]  We affirm the judgment.

[¶29]  Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr