# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2025 ND 55

Kareem Lee Byrd Jr.,
                                                    Petitioner and Appellant

v.

State of North Dakota,
                                                    Respondent and Appellee

No. 20240252

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Stephannie N. Stiel, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Kiara C. Kraus-Parr, Grand Forks, N.D., for petitioner and appellant.

Josh J. Traiser (argued), Nicholas S. Samuelson (on brief), and Brianna K. Kraft (on brief), Assistant State's Attorneys, Fargo, N.D., for respondent and appellee.

**Tufte, Justice.**

[¶1]   Kareem Lee Byrd, Jr., appeals from a district court order denying his application for postconviction relief and judgment. On appeal, Byrd argues he was convicted of a non-cognizable offense because he was convicted of conspiracy to commit intentional or knowing murder. He also argues his plea was not knowing and voluntary because the district court did not comply with Rule 11, N.D.R.Crim.P., accepted a plea to a non-cognizable offense, and did not establish a sufficient factual basis for the offense. He further argues he received ineffective assistance of counsel. We affirm the district court order denying Byrd's application for postconviction relief and judgment, concluding Byrd was convicted of a cognizable offense because Byrd pled guilty to both a cognizable and a non-cognizable offense by *Alford* plea and a factual basis supports the plea to the cognizable offense.

I

[¶2]   Byrd was originally charged with count one, murder, in violation of N.D.C.C. § 12.1-16-01(1)(a), and count two, conspiracy to commit murder, intentional or knowing, in violation of N.D.C.C. §§ 12.1-16-01(1)(a) and 12.1-06-04. Byrd was appointed counsel. An amended information was filed charging Byrd on count two with conspiracy to commit murder, intentional or knowing. Byrd entered an *Alford* plea to count two, conspiracy to commit murder, intentional or knowing. The State dismissed count one. Byrd was sentenced to twenty-five years, with five years suspended for a period of five years of supervised release.

[¶3] Byrd filed an application for postconviction relief. An amended application was filed after counsel was assigned, arguing Byrd was convicted of a non-cognizable offense, he had ineffective assistance of counsel, the court did not comply with Rule 11, N.D.R.Crim.P., and new evidence existed showing Byrd's innocence. Byrd moved for summary judgment, asserting he was convicted of a non-cognizable offense. A combined motion and evidentiary

hearing was held. Byrd and his trial counsel testified. The district court denied summary judgment and postconviction relief. The district court found Byrd failed to show his *Alford* plea was not knowing or voluntary, failed to show he was entitled to a new trial based on purported new evidence, failed to establish ineffective assistance of counsel, and failed to demonstrate that withdrawal of his *Alford* plea was necessary to correct a manifest injustice. Judgment was entered. Byrd appeals.

## II

[¶4] "Postconviction relief proceedings are governed by the North Dakota Rules of Civil Procedure." *Chase v. State*, 2024 ND 215, ¶ 16, 14 N.W.3d 37. "The applicant bears the burden of establishing grounds for relief. Questions of law are fully reviewable." *Id.* (internal citations omitted). We set aside the district court's findings of fact only if we conclude they are clearly erroneous. N.D.R.Civ.P. 52(a)(6). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made." *Chase*, ¶ 16 (citation omitted).

## III

[¶5] Byrd argues he was convicted of a non-cognizable offense because the amended information charged Byrd with conspiracy to commit intentional or knowing murder. "A person convicted and sentenced for a crime may apply for postconviction relief upon the ground that the conviction was obtained or the sentence was imposed in violation of the laws or the Constitution of the United States or of the laws or Constitution of North Dakota." *Kisi v. State*, 2023 ND 226, ¶ 6, 998 N.W.2d 797 (cleaned up) (citing N.D.C.C. § 29-32.1-01(1)(a)). Whether conspiracy to commit murder, intentional or knowing, is a non-cognizable offense is a question of law fully reviewable on appeal. *Id.* ¶ 7.

[¶6] Our non-cognizable offense cases have addressed attempt and conspiracy charges, both of which must include an intentional underlying offense. *See, e.g., Pemberton v. State*, 2021 ND 85, ¶ 13, 959 N.W.2d 891 (holding attempted

"knowing" murder is non-cognizable); *State v. Swanson*, 2019 ND 181, ¶ 15, 930 N.W.2d 645 (holding conspiracy to "knowingly" commit murder is non-cognizable); *Dominguez v. State*, 2013 ND 249, ¶ 22, 840 N.W.2d 596 (holding attempted "extreme indifference" murder is non-cognizable); *State v. Borner*, 2013 ND 141, ¶ 20, 836 N.W.2d 383 (holding conspiracy to commit "extreme indifference" murder is non-cognizable); *but see State v. Vervalen*, 2024 ND 124, ¶ 7, 8 N.W.3d 816 (holding attempted "intentional" murder is cognizable).

[¶7] Byrd pled guilty by *Alford* plea to a violation of N.D.C.C. § 12.1-06-04, criminal conspiracy, and N.D.C.C. § 12.1-16-01(1)(a), murder, by "intentionally or knowingly" causing the death of another human being. "A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy." N.D.C.C. § 12.1-06-04(1). A person is guilty of murder under N.D.C.C. § 12.1-16-01(1)(a) if the person "[i]ntentionally or knowingly causes the death of another human being." A person engages in conduct "intentionally" "if, when he engages in the conduct, it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(a). A person engages in conduct "knowingly" "if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(b).

[¶8] "Our case law distinguishes intentional murder from knowing murder." *Kisi*, 2023 ND 226, ¶ 11; *see also Swanson*, 2019 ND 181, ¶ 13. The statutory definition of knowingly includes "when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(b). "Purpose" has been defined as "[t]hat which one sets before him to accomplish." *Black's Law Dictionary* 1400 (4th ed. 1968). It is "[a]n objective, goal, or end." *Black's Law Dictionary* 1493 (11th ed. 2019). "Intention" and "purpose" are synonyms. *Webster's Third New International Dictionary* 1847 (16th ed. 1971). "As such, the term knowingly, when used in conjunction with N.D.C.C. § 12.1-16-01(1)(a), permits an individual to be convicted of a murder when they did not have the purpose (synonymous with intent) to cause the death of another human being." *Swanson*, ¶ 13.

[¶9]   In *Swanson*, we held "[c]onspiracy to 'knowingly' commit a murder is a non-cognizable offense because it allows an individual to be convicted of the offense without an intent to cause the death of another human being." 2019 ND 181, ¶ 15. However, we have explained "the inclusion of 'knowingly' in the jury instruction *may* render a conviction illegal as a non-cognizable offense." *See Kisi*, 2023 ND 226, ¶ 11 (emphasis added); *Borner*, 2013 ND 141, ¶ 7. If multiple theories of guilt are charged, and one theory is invalid, a conviction is not automatically reversed. *Kisi,* ¶ 14 (citing *Pemberton*, 2021 ND 85, ¶ 18 (explaining that if a jury is instructed on two theories of guilt and one is valid, reversal is not automatic)); *see also Yoney v. State*, 2021 ND 132, ¶ 11, 962 N.W.2d 617 ("When there is evidence of an intent to kill, a person can be convicted of attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(a) for attempting to knowingly or intentionally cause the death of another human being."). In *Vervalen*, this Court confirmed that "attempted intentional murder is a criminal offense." 2024 ND 124, ¶ 7 (citing *Pemberton*, 2021 ND 85, ¶ 14). Conspiracy to commit *intentional* murder is also a cognizable offense.

[¶10] Byrd argues murder under N.D.C.C. § 12.1-16-01(1)(a) is one offense and "intentionally" and "knowingly" culpabilities may not be separated in the statute. We disagree. This Court has continuously separated intentional culpability from knowing culpability and affirmed that attempt or conspiracy to commit intentional murder under N.D.C.C. § 12.1-16-01(1)(a) is a cognizable offense. *See Vervalen*, 2024 ND 124, ¶ 7; *State v. Pendleton*, 2022 ND 149, ¶ 18, 978 N.W.2d 641; *Pemberton*, 2021 ND 85, ¶ 14.

[¶11] Specifically, this Court has distinguished between knowing and intentional murder under N.D.C.C. § 12.1-16-01(1)(a). "Our holding in *Borner* requires the State to prove intent to cause the death of another to support a charge of conspiracy to commit murder." *Swanson*, 2019 ND 181, ¶ 14 (citing *Borner*, 2013 ND 141, ¶ 20). In *Swanson*, we held "[c]onspiracy to 'knowingly' commit a murder is a non-cognizable offense because it allows an individual to be convicted of the offense without an intent to cause the death of another human being." 2019 ND 181, ¶ 15. We did not hold that conspiracy to commit intentional murder under N.D.C.C. § 12.1-16-01(1)(a) is a non-cognizable offense. *See id*; *see*

4

*also Pemberton*, 2021 ND 85, ¶ 13 (holding attempt to commit knowing murder under N.D.C.C. § 12.1-16-01(1)(a) is a non-cognizable offense).

[¶12] In *Pendleton*, we concluded Pendleton was convicted of a cognizable offense when the information and opening jury instruction included both "intentionally" and "knowingly" culpability but the final instructions to the jury removed the "knowingly" culpability. 2022 ND 149, ¶¶ 16, 18 ("Therefore, when reading the jury instructions as a whole, we conclude[d] the instructions fairly advised the jury that they could convict Pendleton on nothing less than intentional attempted murder."). In *Pemberton*, this Court clarified its holding in *Dominguez* was overly broad by including the word "knowingly" when concluding "[w]hen there is evidence of an intent to kill, a person can be convicted of attempted murder under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(a) for attempting to knowingly or intentionally cause the death of another human being." 2021 ND 85, ¶ 14 (quoting *Dominguez*, 2013 ND 249, ¶ 19). In *Pemberton*, we concluded, "Under these instructions, the jury could have found Pemberton guilty of attempted murder without finding he intended to kill another human being." 2021 ND 85, ¶ 17. However, in *Pemberton*, we also considered whether the instruction was harmless error. *Id.* ¶ 25.

[¶13] We have "acknowledged a conviction does not have to be automatically reversed if the jury was instructed on multiple theories of guilt and one theory was invalid." *Pemberton*, 2021 ND 85, ¶ 18 (citing *Dominguez*, 2013 ND 249, ¶ 26); *compare Kisi*, 2023 ND 226, ¶ 11 (affirming jury verdict when evidence showed the conviction was based upon intentional murder); *with Swanson*, 2019 ND 181, ¶ 15 (reversing jury verdict when it was unclear whether the jury convicted for either intentional or knowing murder) and *Pemberton*, 2021 ND 85, ¶ 25 (reversing jury verdict because "[o]n this record, we can only speculate whether the jury found Pemberton acted without intent . . . or whether the jury found he had in fact acted with intent to cause death"). The State relies on *Kisi*, and argues "any error in accepting a plea to conspiracy to commit 'intentional or knowing' murder was harmless because the record established Byrd was convicted of conspiracy to commit intentional murder."

[¶14] An error does not require reversal if the State proves the error was harmless beyond a reasonable doubt. *Kisi,* 2023 ND 226, ¶ 14. We have explained:

> Harmless error is any error, defect, irregularity or variance which does not affect substantial rights. Stated simply, harmless error is error that is not prejudicial. If the error is one of constitutional magnitude, we must determine whether the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence. A federal constitutional error is harmless if we are convinced the error did not contribute to the verdict.

*Pemberton*, 2021 ND 85, ¶ 18 (cleaned up). "Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded." N.D.R.Crim.P. 52(a). "The State bears the burden of proving that an error is harmless and does not warrant reversal." *Pemberton*, ¶ 20. "Our determination of whether an error is harmless beyond a reasonable doubt considers the probable effect of the error in light of all the evidence." *Kisi,* ¶ 16 (concluding the evidence showed beyond a reasonable doubt the jury convicted Kisi of attempted intentional murder and inclusion of the "knowing" instruction was harmless error).

[¶15] Our previous decisions reviewed convictions by a jury for cognizable and non-cognizable offenses after the jury had been improperly instructed on the cognizable and non-cognizable offenses. Here, Byrd pled guilty, by an *Alford* plea, to both a cognizable and a non-cognizable offense. At this stage, we presume the jury would have been properly instructed had the case continued to trial. *See, e.g.*, *State v. Legare*, 2019 ND 276, ¶¶ 6–8, 935 N.W.2d 773 (explaining a guilty plea foregoes a *fair trial* and we cannot assume an error in pretrial will not be cured at trial). Byrd pled guilty to a cognizable offense, conspiracy to commit intentional murder, if a sufficient factual basis supports the conviction. His guilty plea to the non-cognizable offense is therefore harmless error.

[¶16] The amended information charged:

> Count 2: CONSPIRACY TO COMMIT MURDER in violation of Section 12.1-06-04, 12.1-16-01(1), 12.1-16-01(1)(a), 12.1-32-01(1), 12.1-

32-02.1 [], N.D.C.C. in that on or about June 7, 2019: The defendant agreed with one or more persons to engage in or cause conduct which, in fact, constituted the crime of Murder by intentionally or knowingly causing the death of another human being, and any one or more of such persons did an overt act to effect an objective of the conspiracy, to wit: that on the above-stated date, the defendant, KAREEM LEE BYRD, JR, agreed with Charles Edward Harris, III, to engage in the crime of murder and then the Defendant or Harris did an overt act to effect an objective of the conspiracy by using a firearm (a dangerous weapon) to shoot [the victim].

The district court read the amended information to Byrd and explained: "So it alleges that you engaged in the crime and in that crime to effect an objective of the conspiracy by using a firearm, a dangerous weapon, to shoot [the victim]. Do you understand that count?" Byrd replied, "Yes."

[¶17] After Byrd pled guilty, the State proffered a factual basis for the offense:

The factual basis is set forth in Count 2 of the Information, as well as the charging document that was filed with the Court that was authored by the lead investigator in the case.

On June 7th, 2019 in Cass County, the victim in the case [ ] was shot to death. Law enforcement, as they investigated, learned that the defendant and another individual, Charles Harris, had had the guns in that case. Both of them had shot [the victim], causing his death. The two of them had been together earlier in the day. They both had brought weapons when they exited the home that evening and when they encountered [the victim], they both shot him.

[¶18] The court asked Byrd: "[The State] just went over the facts that they have. Do you acknowledge that there's evidence that exists from which a jury or a judge could reasonably conclude that you committed this crime?" Byrd responded: "Yes." The court found "sufficient facts to accept [the] plea and that the same is freely and voluntarily [ ] made."

[¶19] The district court's order highlights an incident report filed with the information: "Officers arriving at the scene observed a vehicle leaving the area with multiple occupants. A traffic stop was conducted, and two occupants— Byrd and Harris—were identified as suspects. Two firearms were recovered; an

7

autopsy would later reveal gunshot wounds consistent with the bullets of the recovered weapons." (Internal record citations omitted.) This document also includes two statements Byrd made to investigators. "Kareem Byrd Jr. told investigators that he and Charles Harris III were involved in a verbal confrontation with the victim and Byrd Jr. stated that he and Harris III retrieved firearms from a nearby location and returned to the victim's location to confront him." "Byrd Jr. stated that both [h]e and Harris III fired multiple rounds at the victim before fleeing."

[¶20] Byrd argues the factual basis was insufficient to sustain the guilty plea because "an armed confrontation could result in an unintended death" and "none of the facts presented asserted there was an agreement by the co-defendants to intentionally or knowingly cause the death." However, the trier of fact could have reasonably concluded the death was intentional. *See* N.D.R.Crim.P. 11(b)(4)(B). The factual basis proffered shows a confrontation occurred, Byrd left the confrontation but freely returned with a firearm. He admittedly used the firearm to fire multiple rounds at the victim while his co-defendant engaged in the same conduct. A sufficient factual basis supports conspiracy to commit intentional murder. Byrd pled guilty to, and was convicted of, a cognizable offense.

IV

[¶21] Byrd argues his plea was not knowing and voluntary because he did not enter his plea knowing conspiracy to commit knowing murder was a non-cognizable offense. Rule 11, N.D.R.Crim.P., governs pleas and provides the procedural framework for entering pleas. "To be valid, a guilty plea must be entered knowingly, intelligently, and voluntarily. Generally, a defendant who voluntarily pleads guilty waives the right to challenge non-jurisdictional defects and may only attack the voluntary and intelligent character of the plea." *State v. Hamilton*, 2023 ND 233, ¶ 6, 999 N.W.2d 214 (citation omitted). Under N.D.R.Crim.P. 11(b), before accepting a guilty plea, the district court must advise the defendant of certain rights. "The requirement to advise the defendant under N.D.R.Crim.P. 11 is mandatory and binding upon the court." *State v. Wallace*, 2018 ND 225, ¶ 7, 918 N.W.2d 64 (citation omitted). "This Court has recognized

8

that N.D.R.Crim.P. 11 does not require ritualistic compliance; however, a court must substantially comply with the rule's procedural requirements to ensure a defendant is entering a voluntary and intelligent guilty plea." *Id.* (cleaned up).

[¶22] The district court must advise the defendant of "the nature of each charge to which the defendant is pleading." N.D.R.Crim.P. 11(b)(1)(F). The district court read the amended information to Byrd. The court further explained the charges to Byrd and asked whether he understood. Byrd replied, "Yes."

[¶23] "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." N.D.R.Crim.P. 11(b)(3). The court must further determine that "the defendant either: (A) acknowledges facts exist that support the guilty plea; or (B) while maintaining innocence, acknowledges that the guilty plea is knowingly, voluntarily and intelligently made by the defendant and that evidence exists from which the trier of fact could reasonably conclude that the defendant committed the crime." N.D.R.Crim.P. 11(b)(4). The court received the factual basis from the State. Following the factual basis statement, the district court asked: "Do you acknowledge that the guilty plea — you've acknowledged that the guilty plea is knowingly, voluntarily, and I believe, intelligently made by you. Do you believe that there's evidence — I need to then, in order to accept your *Alford* plea." The defendant interrupted: "Yes." The court continued: "Do you acknowledge that there's evidence that exists from which a jury or a judge could reasonably conclude that you committed this crime?" Byrd responded: "Yes." The court asked whether Byrd understood the significance of an *Alford* plea. Byrd's counsel explained:

> I did explain to him that the factual basis is presented by the prosecution, that if presented to a jury or a judge, that there is a substantial likelihood that he would be convicted, and he wanted to take advantage of the plea agreement. That's exactly, basically, the words I used for him.

The court confirmed Byrd had this understanding of the *Alford* plea. The court concluded: "I'll find sufficient facts to accept your plea and that the same is freely and voluntarily being made."

[¶24] The district court found "Byrd also acknowledged a jury could reasonably conclude he committed the crime based on the State's evidence. Because Byrd pled guilty and accepted this factual basis, he has waived any right to argue the evidence was insufficient to support a factual basis." We have explained: "*Alford* pleas necessarily indicate an acceptance of the factual basis." *State v. Yost*, 2018 ND 157, ¶ 18, 914 N.W.2d 508. Furthermore, for the reasons discussed above, a factual basis supports the plea to conspiracy to commit intentional murder, and Byrd acknowledged that evidence exists from which the trier of fact could reasonably conclude that the defendant committed the crime. The district court complied with Rule 11, N.D.R.Crim.P., and Byrd's plea was knowing, intelligent, and voluntary.

V

[¶25] Byrd argues he received ineffective assistance of counsel because his counsel allowed him to plead guilty to a non-cognizable offense. This Court applies the two-prong *Strickland* test to assess claims of ineffective assistance of counsel. To prevail on an ineffective assistance claim, the petitioner must establish both: "(1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Schweitzer v. State*, 2024 ND 151, ¶ 13, 10 N.W.3d 114. "Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so." *Id.*

[¶26] "To establish prejudice under *Strickland* in a plea bargain situation, the petitioner must allege facts that, if proven, would support a conclusion that rejection of the plea bargain would have been rational." *Kremer v. State*, 2020 ND 132, ¶ 10, 945 N.W.2d 279. The petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

[¶27] Byrd argues that if his counsel had advised him he was charged with, or was pleading guilty to, a non-cognizable offense, then he would not have pled guilty and would have insisted on going to trial. Byrd pled guilty to both a

10

cognizable and a non-cognizable offense. We concluded the plea to the non-cognizable offense was harmless, and a factual basis supports Byrd's *Alford* plea to the cognizable offense. Therefore, we conclude Byrd failed to meet his burden to show there is a reasonable probability that the result of the proceeding would have been different. Byrd failed to establish his counsel was ineffective.

## VI

[¶28] We have considered the parties' remaining arguments and conclude they are either unnecessary to our opinion or are without merit. We affirm the district court order denying Byrd's application for postconviction relief and judgment.

[¶29] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

11